# WASHINGTON ICE COMPANY *vs.* NATHANIEL WEBSTER.

## Lincoln.    Opinion delivered November 11, 1878.

*Replevin.    Damages.    Trial.    Witness.    Tax.    Evidence.*

Where the plaintiff in replevin becomes nonsuit under an agreement that if the action is maintainable it is to stand for trial for the assessment of damages for the defendant, such assessment is to be regarded as an inquisition to assess damages, and the defendant claiming them is entitled to open and close.

Where the defendant in replevin pleads property in himself and prays for a return, no motion adverse to such return being filed, and upon the evidence a nonsuit is entered, the order for a return is rightfully made a part of the judgment consequent on such nonsuit.

A request " that the measure of damages to be assessed in this case, is the same sum of money which under ordinary circumstances attending a sale and purchase might reasonably be agreed upon as a fair price for the property, between a vendor desirous of selling and a purchaser desirous of purchasing the property as a whole," was properly refused.

When property has been wrongfully taken from its owner, he is entitled as damages to the actual value of the property to him at the time when and the place where it was taken, for any lawful use to which it could be put.

The state of the market and the large or small supply in reference to the demand is a proper subject for the consideration of the jury.

Hearsay evidence is admissible to show the market value of an article.

An instruction, that the allegations in a writ as to quantity are not conclusive on the plaintiff, and that they may be considered as declarations of his, but that they are not binding on him, if mistaken ones, is not erroneous.

The disallowance of questions, the answers to which are obvious and acknowledged truths, afford no substantive ground of complaint,—as whether forty-five tons of ice are or are not worth more than forty tons, or that prices are greater by retail than by wholesale.

The expression of an opinion, as to fair worth of an article by a witness, furnishes no ground of exception, when the phrase is used to express value or price.

When a plaintiff in replevin pays to the collector, without the request and against the will of the defendant, a tax assessed to the defendant on property wrongfully replevied, where there has been no seizure of property to enforce its collection, such payment is to be regarded as voluntary.

In such case the plaintiff cannot recover the amount so paid against the owner, nor can he claim it in reduction of damages for such wrongful taking.

The expense of procuring men, teams and appliances for the removal of goods subsequently replevied, and which become useless by reason of their being so replevied, may be recovered by the defendant as damages, when a nonsuit has been entered.

The defendant is not required to delay his efforts for the care and removal of his property, because of the greater or less probability that it may be wrested from him by a groundless action of replevin. He may well continue his efforts until the writ is served on him.

He is entitled to recover the expenses incurred in preparation for the removal of his property when reasonable and proper and at prices fair and reasonable,—all which is for the jury.

When the plaintiff in replevin procures the property replevied, after it is in his possession, to be weighed by one not shown to have been appointed and sworn as a weigher according to R. S., c. 43, §§ 5 and 6, and on scales not shown to be sealed, as required by § 8, and the weight is entered in a book containing only the weight of the articles replevied, and the weigher dies,—the weighing being *ex parte*, not in the ordinary course of business as between buyer and seller, and being *post litem motam*,—the book is not admissible.

ON EXCEPTIONS AND MOTION.

REPLEVIN of 3,800 tons of ice at Boothbay, stated in 62 Maine, 341, as the case first came before the law court, where it was decided that the defendant recover and that he have damages assessed in this action if he so elect. Afterwards at the April term, 1875, the officer by leave of court to amend his return according to the facts, made the following amended return dated, Lincoln ss. August 13, A. D. 1870, and signed Thomas Boyd, deputy sheriff.

"By virtue of this writ, having first taken a bond as prescribed by law, 1 have this day replevied all the ice by me found in the ice-houses within mentioned, all of which said ice I caused to be weighed on delivery at the wharf in said Boothbay, about three miles from said ice-houses, being the nearest place thereto where ice could be shipped; 2,297 tons and 1,921 pounds of which was thus weighed on successive days, portions of it on each week day, between the twenty-third day of August, 1870, and the sixteenth day of September, 1870 ; and 33 tons and 1,930 pounds thereof was thus weighed on three several days between the twenty-sixth day of September, 1870, and the twenty-sixth day of October, 1870 ; the whole of said ice thus taken by me, weighing 2,331 tons and 1,851 pounds; and on the nineteenth day of said August, 1870, I delivered all the said ice at said ice-houses, to the plaintiffs, reserving to myself authority to weigh the same ; and on the nineteenth day of said August I summoned the within named Nathaniel Webster to appear at court as within directed by reading this writ aloud in his presence and hearing."

The defendant's damages for the taking of the property replevied were assessed by the jury at $6,555.00, and they found specially that the value of the ice replevied where it was situated at the time it was taken was $20,069.33, and that the defendant sustained damage by reason of the taking of the ice in replevin, on account of the preparations he had made to remove it, $835.25.

The plaintiffs moved to set aside the verdict and alleged exceptions stated thus :

Before proceeding to trial the plaintiffs moved the court to strike off the docket entry, "judgment for a return of the goods replevied," and claimed a hearing upon the question whether there should be judgment for a return ; and contended that upon the former report of the case to the law court, that court was not authorized to order an entry of judgment for a return ; and that the question whether there should be such judgment had never been properly tried, and that the court had no authority to make such entry without a distinct submission of that question to them ; and the plaintiffs offered the former report of the case to the law court, to show the limitation of authority upon which that court acted. No other hearing has been had upon the question of a return, except as appears by that report, which makes a part of the case.

The plaintiffs claimed the right to open and close, and especially the right to make the closing argument. They contended that under the decision of the law court, the case should now proceed to the assessment of damages as if in the original trial, and that it was the right of the plaintiffs under the state of the pleadings to make the closing argument. But the presiding justice ruled otherwise ; and the defendant's counsel made an opening argument before any evidence was introduced, and made the closing argument to the jury.

The plaintiffs requested the following instructions, the first of which was given, the second refused, and the third and fourth not given except as appears in the charge.

" I. That defendant is not entitled to any damage on account of his being so situated that he would have special advantages or opportunities over other men in the community to sell the ice to fishermen.

" II. That the measure of damages to be assessed in this case is the same sum of money which, under ordinary circumstances attending a sale and purchase, might reasonably be agreed on as a fair price for the property, between a vendor desirous of selling, and a purchaser desirous of purchasing the property as a whole.

" III. The question for the jury is, what was in fact the quantity of ice taken on the writ,—and the plaintiffs are liable only for the quantity actually taken on the writ, without regard to the quantity stated in it.

" IV. That the allegations in the writ are not *prima facie* evidence of either the quantity or value of the ice replevied in this case."

Plaintiffs except to the instructions to the jury in the charge relating to the subject matter of the several requests.

They also except to the following paragraphs in the charge : " The defendant is entitled to the value of that ice, at the time it was taken, and where it was situated, for any lawful use to which it could be put. If it was valuable to use there, he is entitled to its value for use. If it was valuable for sale, he is entitled to its value for sale. If it was valuable to send to market, he is entitled to whatever value it bore at the time and place for any market, not what it might bring at another market,—I don't mean that —but its value at Boothbay, on August 13, 1870, for any purpose to which it might be put.

" In cases like this I do not understand the rule to be that the jury must be confined as a measure of value, to what the commodity might have been sold for if put in the market on the precise day it was taken. For example, the keeper of a hotel at one of our interior lakes, or a summer watering place, puts up a hundred or two hundred tons of ice for his own use during the summer season. If that ice is taken in the month of April, it bears no value for sale at that time, and if he had put it on the market, and endeavored to sell it at the time taken, he might not have been able to procure a farthing for it, but still it has a value for use, and if taken, the owner of the property would be entitled to the fair value at the time taken, for use, or for any lawful purpose to which he might put it.

"You have a right to consider also whether there was a large supply of ice, or a small supply of ice, at that time for the markets calling for it. You may consider the state of the markets, and the demand for ice at that time. You have a right to consider whether the market was a rising or a falling market."

And plaintiffs also except to the following paragraphs and instructions in the charge :

"Now you have heard the discussion of the evidence on this subject of quantity. The allegations in the writ have been commented on. I instruct you that the alleged quantity in the writ is not conclusive on the plaintiffs in this case. You may consider it as evidence of the declaration of the plaintiffs. If it was a mistaken declaration, it is not binding on the plaintiffs. You may regard it as a piece of evidence tending to show quantity. It is said that it does not appear by the officer's return that all the ice described in the writ was taken. The officer states in his return that he took all the ice that he found, in both houses. You can regard the officer's return as evidence on that point. I instruct you not to regard it as evidence of the quantity by weight, on a subsequent day.

"You must determine, if you think it material, whether the same quantity of ice was found in the houses on the 13th, which was there on the 12th, because the writ bears date on the 12th, and must be regarded as made on the 12th, and so can only be regarded as evidence of quantity in the houses on the 12th."

Also the following on question of value :

"Evidence has been introduced, which you may consider as bearing upon it, of the value upon other days in August.

"The allegation in the writ is, that the ice in those ice-houses, estimated at 3,800 tons, was worth $15,000, on the 12th day of August, 1870. If you find the quantity described in the writ, there at the time of taking, then I instruct you that this allegation of value estops the plaintiffs. But if you find there was no such quantity there, only one-half, three-fourths, seven-eighths as much, I instruct you that you may regard the allegation of value, as evidence tending to show its value."

Plaintiffs also except to that part of the charge giving instruc-

tions to the jury on the subject of damages for preparations made to remove the ice, and especially to this : "You will consider, gentlemen, whether the owner of the ice having made his preparations to remove it, and got as far as this place (Wiscasset) with his teams, for that purpose, might not reasonably wait until the writ was served upon him ; whether he was bound to know that the suit would not be abandoned, and the writ not served upon him, and to take notice before the service of the writ. . . . I do not think that the defendant was bound to take notice of the pendency of the suit, until the fact that the property was taken on the replevin writ, and held by the officer, was communicated to him by the officer, or the writ served on him."

And as to the defendant's compensation for the use of his own team : "If it was reasonable and proper for him to incur the expense of bringing his horse and carriage here, and keeping them here during the removal of the ice and the selling of it, then that was a part of the expense, incurred in the preparation for removal, and he is entitled to compensation."

Plaintiffs also except to all other parts of the charge; and to all rulings made during the trial.

The exceptions, to the admission and the exclusion of evidence, which were considered by the court, sufficiently appear in the opinion.

*A. P. Gould & J. E. Moore*, for the plaintiffs, argued at length under the following heads :

I. Plaintiffs were entitled to the opening and closing arguments.

Citing *Washington Ice Co.* v. *Webster*, 62 Maine, 341, 365, showing that it was the right of the defendant in the first trial to have his damages assessed by a jury, and contending that the last trial was but a resumption of the first ; citing also *Ayer* v. *Austin*, 6 Pick. 225. *Robinson* v. *Hitchcock*, 8 Met. 64, 66— 77. *Page* v. *Osgood*, 2 Gray, 260. *Toppan* v. *Jenness*, 21 N. H. 232, 234. *Curtis* v. *Wheeler*, 1 Moody & Malkin, 493. S. C., 4 Car & P, 196. *Moulton* v. *Bird*, 31 Maine, 296, 298. Colby's Practice, 236. *Brooks* v. *Barrett*, 7 Pick. 94, 100. 1 Greenl. Ev. § 74. *Thurston* v. *Kennett*, 22 N. H. 151. *Belknap* v.

*Wendell*, 21 N. H. 175.    *Buzzell* v. *Snell*, 25 N. H. 474, 481.
*Lunt* v. *Wormell*, 19 Maine, 100, 102.    *Spaulding* v. *Hood*, 8
Cush. 602.·

II. (1). There has been no binding order for a return in this
case, and we should have been allowed to show that the defendant
is not entitled to a return, and therefore is not entitled to damage
for taking.    *Bath* v. *Miller*, 53 Maine, 308, 318.    *Smallwood* v.
*Norton*, 20 Maine, 83. 88.    *Badlam* v. *Tucker*, 1 Pick. 284,
286.    *Bath* v. *Miller*, 53 Maine, 308, 316.    *Witham* v. *Witham*,
57 Maine, 447, 449.    *Bartlett* v. *Kidder*, 14 Gray, 449.    *Whit-
well* v. *Wells*, 24 Pick. 25, 32, 33.

(2). Even if the defendant had lawful possession of the ice at
the time it was taken on this writ, but did not own it, and held it
simply as the agent of his vendee, he was not entitled to a return,
or to damages; because the owner of the property could have
maintained trespass against the plaintiffs for taking it, or could
have taken the ice from the plaintiffs on a writ of replevin.
*White* v. *Dolliver*, 113 Mass. 400.

It was there held that, "one whose property has been replevied
by a writ against his agent, or his bailee, can retake it by replevin
from the plaintiff in the first action, even during the pendency of
that action."

We should surely then have been allowed to prove that defend-
ant did not own the property.

(3). But the order for a judgment of return, even if the court
was authorized to make it, should not have precluded us from
proving that the defendant had no title and no right to dam-
ages.    *Davis* v. *Harding*, 3 Allen, 302.    *Tuck* v. *Moses*, 58
Maine, 461, 476.    *Bartlett* v. *Kidder*, 14 Gray, 449.    *Witham*
v. *Witham*, 57 Maine, 447, 449.

III. The most important fact to be ascertained by the trial was
the quantity of ice replevied. (1). Plaintiffs' third and fourth
requests should have been given.    *Miller* v. *Moses*, 56 Maine,
128, 139.    *Ramsdell* v. *Buswell*, 54 Maine, 546.    *Brown* v.
*Smith*, 1 N. H. 36, 38.

(2). The officer's return is evidence of quantity, and not only
evidence but the most important and reliable, if not the only com-

petent evidence, where the quantity replevied is distinctly stated. *Miller* v. *Moses,* 56 Maine, 128, 138. *Pierce* v. *Strickland,* 2 Story, 292, 308-9. *Haynes* v. *Small,* 22 Maine, 14. *Tuck* v. *Moses,* 58 Maine, 461, 474. *Johnson* v. *Stone,* 40 N. H. 197. *Avery* v. *Bowman,* 39 N. H. 393, 395. *Angier* v. *Ash,* 26 N. H. 99, 106. *Bamford* v. *Melvin,* 7 Maine, 14. *Hines* v. *Allen,* 55 Maine, 114, 115. *Stevens* v. *Tuite,* 104 Mass. 328, 331-2. *Lockwood* v. *Perry,* 9 Met. 440. *Burkle* v. *Luce,* 6 Hill. 558.

That the officer's return is the proper evidence of quantity, see also, *Bruce* v. *Holden,* 21 Pick. 187, 189. *Brown* v. *Davis,* 9 N. H. 76. *Morse* v. *Smith,* 47 N. H. 474, 477. *Stinson* v. *Snow,* 10 Maine, 263. *Agry* v. *Betts,* 12 Maine, 415. *Grover* v. *Howard,* 31 Maine, 546. *Messer* v. *Bailey,* 31 N. H. 9. *Dickinson* v. *Lovell,* 35 N. H. 9. *State* v. *Lang,* 63 Maine, 215, 221.

IV. Error in rulings rejecting and admitting evidence on the subject of quantity.

The plaintiffs proposed, for the purpose of ascertaining the actual value of the ice replevied, to prove that it was removed from the houses to the vessels in the most prudent, careful and expeditious manner, and weighed on delivery at the wharf. They " proposed to show by Meserve that he was an experienced man in barring up and removing ice from the ice-house; and that he, with other experienced men, cut out and barred up and removed from the houses all the ice in question, in a prudent and careful manner ; also that the ice was removed from the ice-houses to the vessels in the most prudent, careful and expeditious manner, in which it could possibly be done, and that the ice was weighed on delivery at the wharf about three miles from the house."

This testimony was excluded, and " the court informed the counsel that he had come to the conclusion to rule out any further evidence as to what plaintiffs did, by their servants, with that ice, after it was delivered to them by the officer, except so far as it goes to show the condition that the ice was in, in the houses at the time taken."

This ruling cut off the only possible means the plaintiffs had except the officer's return to show what quantity of ice was replev-

ied. They had conducted the business of removal and shipment in the usual manner.

They did not measure the ice in the houses after it was replevied, because the quantity could not thus be accurately ascertained. The quantity which can be taken out of a house of a given size, depends very much upon the manner in which it was packed when put in. Plaintiffs contended that this ice was very badly packed, and necessarily wasted a good deal in cutting out. The defendant denied this. It is obvious that while this question was unsettled a measurement in the houses would be of little value. No measurement of the ice was produced by the defendant.

Samuel E. Marshall, experienced in the ice business, testified that weighing ice out of houses that it would hold out from forty-five to fifty feet to the ton ; that he never could make it hold out at forty feet. He testified, on the defendant's examination against plaintiffs' objection, that in 1870 and prior to that time it was customary to sell at the rate of forty feet per ton on the Kennebec. We were not permitted to ask the witness whether, when the ice was sold at forty feet per ton according to the custom on the Kennebec, it was sold at full price or less than the market price because forty feet were actually less than a ton.

Eliphalet Thorpe weighed all the ice. He owned the only public scales in that town, and weighed the ice in the regular course of his business, and made a record of the weights at the time in a book kept by him for that purpose, which was signed and sworn to by him before a justice of the peace. He is now dead. As he was a disinterested person, his record of the weights is competent evidence, as we think, upon the authorities which we have consulted.

The record does not stand alone, as we have proof *aliunde* that Thorpe weighed all the ice as it was delivered at the wharf, and that he actually kept a record of the weights in this book, and furnished them every Saturday night, to the witness Fisher.

And we offered to prove, and could show at a future trial, " that it was in accordance with the usual course and custom of business in Boothbay, for all commodities in large quantities to be weighed on those scales for the public, by this weigher, Mr. Thorpe."

Thorpe's record, and other evidence on the subject, was excluded very properly under the ruling which had just been made that no evidence of the weighing of the ice at the wharf, by the plaintiffs would be received, but if the court should hold that this ruling was wrong then Thorpe's record and the testimony relating to it would be important and both parties must desire to have it decided before another trial. *Augusta* v. *Windsor*, 19 Maine, 317, 320, 321. *Warren* v. *Greenville*, 2 Strange, 1129. *Nicholls* v. *Webb*, 8 Wheat. 326, 337. *Oldtown* v. *Shapleigh*, 33 Maine, 278, 280. *Dow* v. *Sawyer*, 29 Maine, 117. *Price* v. *Torrington*, 1 Saulk. 285 (the leading case). *Holliday* v. *Martinet*, 20 Johns. 168. *Batre* v. *Simpson*, 4 Ala. 306, 312. *Jones* v. *Howard*, 3 Allen, 223, 224. *Philadelphia Bank* v. *Officer*, 12 Serg. & R. 49. *Nourse* v. *McCay*, 2 Rawle, 70. *Higham* v. *Ridgway*, 10 East. 109.

V. Rulings on the subject of damages.

(1). The rule stated in the second request is that laid down in *Stevens* v. *Tuite*, 104 Mass. 328, and confirmed in this case, 62 Maine, 362. The purpose of the defendant was to get a rule which would give him the benefit of the high prices later in the season if he chose to keep his ice till that time; this, though contrary to the decision of the court, was accomplished by the ruling. *Shepherd* v. *Johnson*, 2 East. 211, the leading case for intermediate higher damages, is disapproved in Mass. *Gray* v. *Portland Bank*, 3 Mass. 364, 390. So especially in actions of tort. *Greenfield Bank* v. *Leavitt*, 17 Pick. 1 *Brown* v. *Haynes*, 52 Maine, 578, 581. *Robinson* v. *Barrows*, 48 Maine, 186, 190. *Hayden* v. *Bartlett*, 35 Maine, 203. *Pinkerton* v. *Railroad*, 42 N. H. 424, 463. *McKenney* v. *Haines*, 63 Maine, 74. . .

VI. Taxes. We offered to show " that the ice was taxed to Webster, and that when plaintiffs were about to remove it, the tax collector came and proposed to distrain the property," whereupon plaintiffs paid the tax. The evidence was wrongly rejected. *Huggeford* v. *Ford*, 11 Pick. 223. Sedgewick on Damages [500,] 6th Ed. 626. *Mattoon* v. *Pearce*, 12 Mass. 406. *Stollenwerck* v. *Thacher*, 115 Mass. 224, 228.

VII. The special finding for expenses in preparing to remove

the ice; and the overestimate of value even on defendant's testimony.

*B. F. Butler* with *C. P. Thompson,* for the defendant.

APPLETON, C. J.   When this cause was first tried, the presiding justice was of opinion that the action was not maintainable, and that the defendant's claim for damages for the plaintiffs' unlawful taking could only be determined in a suit upon the replevin bond. By agreement of parties, the case was withdrawn from the jury, to be reported to the full court.   If the action could not be maintained upon the evidence offered and introduced by the plaintiffs, a nonsuit was to be entered.   If the action could be maintained, it was to stand for trial; and the court were also authorized to pass upon the several propositions in respect to damages, made by the defendant's counsel.

Upon a full hearing of the questions of law raised upon the report, it was determined that the action was not maintainable; and a nonsuit in pursuance of the agreement of parties was ordered. It was further decided that the defendant had a right to have his damages assessed.   62 Maine, 341.

Nothing is better settled than that if the trial had proceeded, and the title to the property replevied and the damages severally claimed by the plaintiffs and defendant had been submitted to a jury, the plaintiffs would have been entitled to open and close.

But by the agreement of parties, if the title of the plaintiffs failed they were to be nonsuit, in which event they could claim no damages.

In replevin both parties are actors.   But the plaintiffs, having become nonsuit, had thereby ceased to be actors.   They had nothing to do by way of opening the case.   They had no evidence to adduce in the first instance.   As between them and this defendant they had ceased to be actors and were only to be heard in the defense to resist the claim of damages.   The affirmative of the issue rests on the party claiming damages.   He is the moving party.   The case as to him is simply an inquiry as to damages. It is an inquisition made at the instance of the defendant.   When, either from the position of the case or the agreement of parties,

the only inquiry relates to the assessment of damages, the party making the claim should open and close. The party denying damages has nothing to do until the other party has shown in some way the extent and grounds of his claim. This is in fact an inquisition to assess damages as in *Cable* v. *Dakin,* 20 Wend. 172. So when property is to be taken for public uses, the owners of land claiming damages have always the right to open and close .without regard to the question by which party the petition has been filed. *Burt* v. *Wigglesworth,* 117 Mass. 302. The reason is that the affirmative rests on the one who claims damages, as in the present aspect of the case it does on the defendant. The plaintiffs asked nothing and had no opening to make. The defendant claimed all that was in dispute, and it was for him to commence to show his claim.

The plaintiffs having failed to make out any title to the property replevied, the order for a return was properly made. There was no evidence whatever negativing the defendant's right to have a return of the property replevied. The defendant in his plea had prayed for a return. The plaintiffs had not even interposed a motion adverse to an order for a return in accordance with the defendant's prayer. The order for a return was rightfully made as part of the judgment of the court consequent upon the nonsuit. In *Hoeffner* v. *Stratton,* 57 Maine, 369, Walton, J., says : "In all cases when the defendant pleads property in himself or a stranger and traverses the plaintiff's title, if he prevails, he will be entitled to a return. . . When the defendant prevails on such an issue, his right to a judgment for a return is as clearly established as his right to a judgment for costs." In *Quincy* v. *Hall,* 1 Pick. 357, 359, "if he (the plaintiff) fail to make out his title," observes Parker, C. J., "the possession ought to be restored to him from whom by process of law it was taken ; and it is wholly immaterial whether the defendant had any title or not, provided the plaintiff has none ; for the defendant is entitled to the possession, being answerable for the chattel to the true owner. Nor is it necessary there should be an avowry, in order that there should be a judgment for a return ; for, if it appears that the property is not in the plaintiff, the law will restore the chattel to him who had the possession."

The plaintiffs having without right taken the property from the possession of the defendant, the law requires that they should restore it. "A return of the property as a general rule," observes Colt, J., in *Barry* v. *O'Brien*, 103 Mass. 520, "follows of course. If the defendant be not the true owner, he may still be accountable over for it to such owner."

The plaintiffs except to the refusal of the presiding justice to give the following instruction : "That the measure of damages to be assessed in this case is the same sum of money which, under ordinary circumstances attending a sale and purchase, might reasonably be agreed on as a fair price for the property, between a vendor desirous of selling, and a purchaser desirous of purchasing the property as a whole."

This instruction could not properly have been given. The seller was not obliged to sell to one purchaser the property as a whole. He might sell in such proportions as he could find purchasers. According to this request the seller must find a purchaser desirous of purchasing all the ice as a whole. If he failed, is he to be precluded from selling a portion to one and a portion to another ? Assuredly, it is not so.

Besides it seems that there may be cases when the jury may be authorized to give smart money, when the proceedings on the part of the plaintiff are vexatious and oppressive. *Cable* v. *Dakin*, 20 Wend. 172. Exemplary damages may be given where there has been outrage in the taking or vexation or oppression in the detention. *Craig* v. *Kline*, 65 Pa. St. 399.

The court instructed the jury as to damages as follows : "The defendant is entitled to the value of that ice, at the time it was taken, and where it was situated, for any lawful use to which it could be put. If it was valuable to use there, he is entitled to its value for use. It it was valuable for sale, he is entitled to its value for sale. If it was valuable to send to market, he is entitled to whatever value it bore at the time and place for any market, not what it might bring at another market,—I don't mean that,— but its value at Boothbay on August 13, 1870, for any purpose to which it might be put."

To these instructions there can be no reasonable objections

urged. The value at the time and place of taking is the rule. But suppose there is no market at the place of taking and no sales there. Then, what is the rule? Is the party wrongfully taking the property of another to be exempt from damages? Certainly not. If there had been none on the precise day, then it is necessary to have recourse to sales nearest the time at which the goods in question were taken. *Dana* v. *Fielder*, 12 N. Y. 40. *Berry* v. *Dwinel*, 44 Maine, 255. So, if at the place of taking, there were no sales, then the value of the property taken at the nearest points affording a market at which sales are made, should be ascertained for the purpose of determining damages. *Gregory* v. *McDowell*, 8 Wend. 435. Such is the general rule.

As the taking by the plaintiffs was wrongful, the defendant is entitled to full indemnity. The measure of damages is the actual value of the property to the plaintiffs as an article of merchandise or sale, whether the market for it is in this state or elsewhere. *Coolidge* v. *Choate*, 11 Met. 79. The actual value to the owner is the just rule of damages in an action against one who converts it to his own use. *Suydam* v. *Jenkins*, 3 Sandf. 621. In *Selkirk* v. *Cobb*, 13 Gray, 313, while the rule was recognized that in trover the measure of damages was the value of the property at the time of conversion, a refusal to instruct the jury, that the plaintiff was entitled to recover only the value at the time and place of conversion, was held no ground of exception. The ice, besides its value in use, had value as an article of merchandise for exportation. Its value at the place of deposit was dependent upon the price to be paid in the market to which it might or would have been exported, less the cost of transportation.

Throughout the entire charge, the measure of damages was held to be the fair value of the property at the time taken for use or any lawful purpose to which the owner might put it. This rule is fully sanctioned by the opinion of the court in *Stickney* v. *Allen*, 10 Gray, 352. It is not for the wrong doer to limit or restrict the owner in the use he may make of his property, or in the lawful purposes to which he might put it.

The state of the ice market, the large or small supply of ice, the price at which sales were made, were all proper subjects for the

consideration of the jury. The price of an article, its value in the market, rises or falls accordingly as the relation between supply and demand changes. " So, persons familiar with a market have been examined as to the demands of such market, what is the market valuation of a particular article, and how such value is affected by particular influences." 1 Wharton on Evidence, § 446.

" Value, it must be remembered, consists in the estimate, or opinion of those influencing the market, attachable to certain intrinsic qualities belonging to the article to be valued. The opinion of such persons can only be presented in most cases, by hearsay. A broker, for instance, who is called as to the market value of a particular piece of property, and who is cross-examined as to the sources of his knowledge, must ultimately say ' it came from A, B & C.' Even should we call on A, B & C, we should get no further than hearsay ; for the testimony of A, B or C, as to what he would give for the article, is of little weight, unless such testimony is based, not on any properties of the thing making it peculiarly valuable to this particular witness, but on the estimation at which the thing is generally held in the market. Hence it is, that it is no objection to the evidence of a witness testifying as to market value that such evidence rests on hearsay." 1 Wharton on Evidence, § 449. In *Whitney* v. *Thacher*, 117 Mass. 523, 527, Wells, J., uses the following language : " We see no reason why merchandise brokers in Boston, members of firms doing business, and having houses established both in Boston and New York, might not properly be admitted to testify as to the market value, at a particular date, of an article of merchandise with which they are familiar, even though their knowledge was chiefly obtained from daily price currents and returns of sales furnished them in Boston from their New York house. It is not necessary in order to qualify one to give an opinion as to values, that his information should be of such a direct character as would make it competent in itself as primary evidence." Prices current obtained from the agent of a manufacturer or from dealers in the manufactured article generally, and which have been prepared and used by parties furnishing them in the ordinary course of their business, are so far evidence of the value of the article men-

tioned in them, as that they may be submitted to the jury as throwing light on the matter and as some guides to honest men and for their consideration. *Cliquot's case*, 3 Wall. U. S. 115. The weight to be attached to this kind of evidence depends on the means of knowledge of the witness as ascertained upon his direct and cross-examination.

A remark made by way of illustration cannot be regarded as the subject of exception when no rule of law is erroneously stated.

The writ commanded the officer to replevy " a certain lot of ice being about thirty-eight hundred tons of ice, now lying and being in certain ice-houses situated in the town of Boothbay, in the county of Lincoln and state aforesaid, and owned and occupied by Nathaniel Webster," etc. The officer returned that he had " replevied all the ice by him (me) found in the ice-houses within mentioned," etc.

In relation to the writ, the presiding justice instructed the jury as follows : " The allegations in the writ have been commented on. I instruct you that the alleged quantity in the writ is not conclusive on the plaintiffs in this case. You may consider it evidence of the declaration of the plaintiffs. If it was a mistaken declaration, it is not binding on the plaintiffs. You may regard it as a piece of evidence tending to show quantity."

The writ was dated August 12, 1870. The officer's return was the next day. There was no proof of any material change of quantity during that time. The writ is a declaration of the quantity on the day preceding the service of the declaration. If a plaintiff in replevin had made a statement of the quantity, now in certain places, and to be replevied, his allegations would be admissible proof to show the quantity at the time and place referred to. They would not be conclusive. They would be receivable against him. But when it is seen that this instruction is limited only to the day when the writ was sued, and that this declaration is not to be regarded as evidence of the amount on a subsequent day, and that the jury were restricted to the " quantity of ice found " in the defendant's ice-houses, when he " was dispossessed and the plaintiffs took possession," there seems no just ground of complaint of the ruling of the justice presiding.

Throughout the charge the amount taken by virtue of the replevin writ is the amount upon which damages are to be assessed.

Complaint is made that Dennis W. Clark was not permitted to answer the inquiry whether the market value of ice per ton for small quantities was not higher than for large. A jury must be very incompetent to the discharge of its duties, if it needs testimony to prove that sales by retail are at higher rates than at wholesale. But if information on this point was needed for their enlightenment, they had it; for subsequently during cross-examination this question was put, whether the market price of small quantities of ice would not be greater than large, to which the answer was, " in general I should say yes;" so that the information on that point, if needed, was thus obtained.

The defendant offered evidence of a custom, in sales of ice in large quantities, of ascertaining the number of tons by admeasurement, as by allowing forty cubic feet to a ton, and that such sales were usually made upon this basis. The plaintiffs called Samuel E. Marshall to show that forty-five or fifty feet were required for a ton by weight. The defendant inquired of him on cross-examination, if it was not customary to sell ice on the Kennebec river upon the basis of forty cubic feet to a ton, to which he answered in the affirmative. The plaintiffs then inquired if it was not usual to sell at a less price per ton when sales were made upon this admeasurement than when by weight; but the court excluded the answer to this inquiry.

It needs neither argument nor proof to show that less than a ton of ice is not equal in value to a ton. If it took, as the plaintiffs' testimony shows, forty-five or fifty cubic feet for a ton by weight, there was no need of witnesses to prove that when less than a ton of ice was thus sold by admeasurement at the rate of forty cubic feet per ton, the price would be less than when a greater quantity, *i. e.*, a ton by weight was sold. If, then, the witness had answered affirmatively, that the price was less when sold by admeasurement than when sold by weight, it would have been but simply a re-affirmation of what he had before stated, and it would not have aided the plaintiffs. It is no just ground of exception that a witness is not permitted to repeat what he had

before stated because a different phraseology is adopted in making the inquiry. It hardly needed testimony to show that a less quantity of ice would not bring so much as a greater quantity. Yet that was the substance of the question.

If the witness had answered that the price was the same, the plaintiffs would not have been benefitted by an answer so palpably absurd.

It is obvious that the plaintiffs cannot have been harmed by this ruling of the presiding justice. The value of a ton by measurement would depend upon the number of cubic feet required for a ton by weight. If in their judgment it took forty-five or fifty cubic feet for a ton by weight, and sales were usually made at the rate of forty cubic feet a ton, it hardly required testimony to show that a ton of forty cubic feet would sell for less than a ton of forty-five for fifty cubic feet.

The objection is taken that Alfred Lennox was permitted to give his opinion of "the fair worth of ice instead of its market value." The witness knew of no sales at Boothbay where the ice in dispute was, except made by himself. In his testimony, he speaks of having made inquiries as to the value of ice; and he was cross-examined by the plaintiffs on his qualification to testify to the value of ice. After this, in answer to an inquiry by the defendant as to "the fair worth of ice at Boothbay in the middle of August," he said eight dollars a ton. It is apparent that the "fair worth" and value of ice were regarded as identical, and that there could have been no misunderstanding as to the meaning of the witness nor any injury to the plaintiffs from either the question or the answer. Indeed, neither counsel use the term value, yet it is impossible to doubt that both made their inquiries in reference thereto and were correspondingly answered. If there had been an apprehension that there could be a possible misunderstanding on the part of any one, all danger of such misunderstanding would have been easily obviated by pertinent inquiry. The niceties of language are not always regarded in the trial of causes, and a new trial is not to be granted for mere inaccuracy of expression, where such inaccuracy has and can have had no tendency to mislead the jury.

The plaintiffs' counsel offered to show that the ice was taxed to the defendant, and that when the plaintiffs were about removing it, the tax collector came and proposed to distrain the property, and that thereupon (the witness) an agent of the plaintiffs paid the taxes. This evidence was excluded, and we think rightfully.

The tax was against the defendant, and, if for the ice, upon his property. There was no seizure of the property replevied. There was merely a proposal to distrain. The plaintiffs did not wait till there was a seizure. They made no payment to relieve from distress; for there had been no distress. It was then a voluntary payment, by one not owning the ice, of a tax assessed against the owner. It was a payment without the consent of such owner and presumably against his will.

The present trial was to assess damages against the plaintiffs for wrongfully taking the defendant's property from his possession. A wrongdoer cannot pay taxes upon property tortiously taken by him, because the collector threatens to seize it, and then recover of the owner the amount paid. One cannot make another in such case a debtor by reason of his wrong doing. It will be observed, that here was no existing lien to be removed; for there was no seizure or other act by which the collector had acquired a lien.

Whether in a suit upon the bond for a non-return of the property replevied a deduction could be made for this cause is a matter to be determined when the question shall arise. Here only the damages for the unlawful taking were involved.

The defendant had made preparations for removing his ice. What he had done, how far he had proceeded, was in evidence before the jury. It was decided in 62 Maine, 341, when this case was before us, that the expense of procuring men, teams and appliances for the removal of the goods replevied, which became useless by reason of such replevin, might be recovered in damages.

That portion of the charge to which exception was specially taken is as follows: "You will consider, gentlemen, whether the owner of the ice, having made his preparations to remove it and got as far as this place (Wiscasset) with his teams, for that purpose, might not reasonably wait till the writ was served upon him; whether he was bound to know the suit would not be abandoned

and the writ not served upon him, and to take notice before the service of the writ. . . I do not think the defendant was bound to take notice of the pendency of the suit, until the fact that the property was taken on the replevin suit, and held by the officer, was communicated him by the officer or the writ served on him."

There is no legal presumption a wrong will be done. The defendant was not bound to assume there would be an invasion of his rights. He was not bound to delay the taking proper care of his property, because a groundless suit of replevin might withdraw it from his control. He might properly act, until notified that the suit had been commenced.

As to the defendant's compensation for the use of his team, the judge charged as follows: "If it was reasonable and proper for him to incur the expense of bringing his horse and carriage here, and keeping them here during the removal of the ice and the selling of it, then that was a part of the expense incurred in the preparation for removal and he is entitled to compensation."

It was matter of fact for the jury to determine what expenses had been incurred and how far such expenses were reasonable and proper. It was not a question of law but of fact.

In another part of the charge (the whole of which is reported) the presiding justice says to the jury "you will determine whether the preparations which he (the defendant) describes and tells you he made, were reasonable and proper for the purpose for which he tells you they were made, the removal of the ice. If the preparations he made were reasonable and proper and the prices he tells you he paid were fair and reasonable, then he is entitled to what he paid."

It is difficult to perceive how these questions could have been presented to the jury more fairly and clearly than they were.

The defendant fixed his quantity by admeasurement at the icehouse. The ice was replevied on August 13th, 1870. It was removed at various times between August 23d, and October 26th, of the same year, a distance of about three miles to the place of shipment, where it was weighed. The plaintiffs were wrongdoers in the removal of the ice. It was in their custody and control during the removal. The principal question related to quantity. The

plaintiffs inquired of some of the witnesses as to the number of tons handled by them, which the court excluded.

Subsequently in the progress of the cause the court ruled that the plaintiffs might prove the weight of ice at the wharf where it had been weighed.

" The plaintiffs afterwards called Gideon Meserve and proposed to show by him that he was an experienced man in barring and removing ice from the ice-house ; and that he with other experienced men cut and barred up and removed from the houses, all the ice in question in a prudent and careful manner ; also that the ice was removed from the ice-houses to the vessels in the most prudent, careful and expeditious manner in which it could possibly be done, and that the ice was weighed on delivery at the wharf, about three miles from the house." This evidence was excluded.

The amount of ice taken from the ice-houses was one of the most material and important questions to be determined. The defendant showed the amount in the ice-houses by admeasurement, that is, the number of cubic feet. It is customary, it appears from the evidence, to sell large quantities of ice, as in a storehouse, by admeasurement at the rate of forty cubic feet for the ton by weight. How many cubic feet, whether forty or forty-five or any other number more or less, would be equivalent to a ton by weight, is an inquiry bearing mainly on the question of value, as it is evident that the price of a ton by admeasurement, at the rate of forty cubic feet to the ton, will be same as that by weight if that number of cubic feet is equivalent to a ton by weight, and that it will vary from that price as a larger or smaller number of cubic feet is held to be the equivalent of a ton when ascertained by weight. Whether the number of tons should be determined by actual weight or admeasurement was important only as bearing on the price and value.

The offer was a totality. Obviously, the most important portion of it related to the weight at the place of shipment, for if not weighed there, or if there was not legal evidence of its weight, the care used in its removal would be unimportant. The total weight at the ice-houses was the ultimate fact sought. That would be the weight at the place of shipment, to which is to be added the

weight lost, by heat, breakage, etc., in the process of removal. The amount was an unascertainable quantity, to be arrived at only by approximation. All that could be hoped for would be an approximation to the true weight of the ice actually removed.

If, then, for any cause, it should be impossible to procure legal evidence of the weight at the place of shipment, the other evidence contained in the offer would lose whatever importance it might otherwise have. The mode and manner of removal, and all admissions and exclusions of evidence relating thereto, would become unimportant. The question then occurs, did the plaintiffs offer any competent evidence of the weight at the place of shipment, even if the ice was removed with the most scrupulous care and caution.

It appeared that the ice was weighed at the wharf by one Thorpe, who owned platform scales which were used for weighing coal, hay, etc., and on which he was accustomed to weigh all commodities in large quantities for the public. Thorpe has since deceased, and the plaintiffs offered a weigh book containing the original entries of the weight of the several loads of ice weighed by him for the plaintiffs, and nothing else.

The scales, upon which the ice was weighed, are not shown to be those required by R. S., c. 43, § 8, to be used. There is no evidence they were even sealed as is provided by § 8. There is no proof that Thorpe was ever appointed or sworn as a weigher, as provided by §§ 5, 6. If proof had been attainable of these several facts, it should, and we doubt not from the known vigilance of the able counsel for the plaintiffs, it would have been forthcoming. The ordinary weighing is between buyer and seller where the fees are " to be paid by the purchaser." Here the weighing was *ex parte.* It was a weighing *post litem motam* and for the purpose of creating evidence to affect the result. It was a weighing to which the owner was no party. The book was not one containing Thorpe's general doings as a weigher. It contained only the special entries. of the weight of the ice of the defendant which the plaintiffs procured him to weigh, and it is entitled to no more consideration than if any employee of the plaintiffs had done the weighing and made the entries on a book or paper and then deceased. What

was done, was under a special employment and not in the discharge of any public duty. The book is a record made at the instance of a wrongdoer and for his protection, and it is not admissible within any of the recognized principles of law or within any adjudged case.

The book being inadmissible, the rest of the evidence offered became of no consequence. Whether the ice was prudently cut out and barred and removed from the ice-houses to the vessels in the most prudent, careful and expeditious manner, can be of no avail, if the weight after such removal cannot be established by legal and competent proof.

The ice was removed between August 23d and October 26th. It was exposed to loss by the heat of the sun during its removal. The ice remaining after each removal was exposed to loss. There was loss by breakage. The defendant had no knowledge of or control over the removal. The plaintiffs were wrongdoers throughout. Even if there was evidence of the weight at the time and place of shipment, it would be a grave question how far the defendant's rights were to be affected by these wrongdoings of the plaintiffs continued during a period of more than two months. But it is not necessary to discuss this question.

A motion is made for a new trial as against evidence. The case was submitted to the jury under a charge clear, accurate and impartial. The defendant is entitled to damage. The amount was for the jury. The evidence was conflicting. The trial occupied much time and was necessarily attended with heavy expense. It was for the jury to determine the damages sustained. There is no such error in the verdict as will justify our interference. Indeed, it is doubtful whether any jury would be likely to make a reduction of the damages equal to the cost attendant upon a trial. We think no sufficient reason is given for disturbing the verdict. The parties have appealed to the jury, and they must abide the result.

*Motion and exceptions overruled.*

WALTON, BARROWS, DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.