WALLACE *v.* THAMES & MERSEY INS. CO.    (Two Cases.)

CUNNINGHAM *v.* MECHANICS' & TRADERS' INS. CO.

WALLACE *v.* BRITISH AMERICAN ASSUR. CO.

*(Circuit Court, E. D. Michigan.  1884.)*

1. MARINE INSURANCE—ABANDONMENT OF VESSEL.
    The right of abandonment does not depend on the high probability of a total loss either of the property or of the voyage, or both. The insured is to act, not upon certainties, but upon probabilities; and if the facts present a case of extreme hazard, and of probable expense exceeding half the value of the ship, the insured may abandon, though it should happen that she was afterwards recovered at a less expense.

**2.** SAME—VALUATION—LOSS.

In ascertaining the value of the ship, and whether she is injured to the amount of half her value, the true basis of the valuation is the value of the ship at the time of the disaster; and if, after the damage is or might be repaired, the ship is not or would not be worth, at the place of the repairs, double the cost of the repairs, it is to be treated as a technical total loss.

**3.** SAME—REPAIRS—DEDUCTION OF ONE-THIRD NEW FOR OLD.

The ordinary deduction in cases of a partial loss of one-third new for old, from the repairs, is inapplicable to the case of a technical total loss by an injury exceeding one-half the value of the vessel.

**4.** SAME—EXPENSES OF RAISING AND TOWING VESSEL.

The expense of raising and towing a sunken and disabled vessel to a port of repair, no matter by whom paid, should be considered as part of the loss, and it is immaterial that a part of this cost has been contributed upon an adjustment in the nature of general average by the cargo.

**5.** SAME—POLICY CONSTRUED.

Policy construed, and *held* that there was nothing in the special provisions thereof to preclude the insured from recovering for a constructive total loss after abandonment, when the amount of the repairs, deducting one-third new for old, added to the expense chargeable to it of raising and taking the vessel to the port of repairs, exceeded one-half its agreed value.

At Law.

MATTHEWS, Justice. These are actions upon several policies of marine insurance upon the schooner John Wesley, the respective plaintiffs being each the owner of one-fourth interest. The vessel was valued in the policies at $12,500. The amount of insurance is $10,000, each policy being for $2,500. The plaintiffs claim to recover for a constructive total loss. The defendants admit only a partial loss. The causes have been submitted to the court, the intervention of a jury being waived, upon a written stipulation as to the facts, as follows:

"(1) That while said policy was in full force, and on or about the twenty-fifth of September, 1883, said schooner, while on a voyage, as alleged in the declaration, was, by reason of the peril insured against by said policy, stranded and wrecked near Wind-mill Point, on the north shore of Lake Erie; that she had on board at the time a cargo of about 595 tons of iron ore. (2) That by reason of such stranding, and the perils incident thereto, said schooner was greatly injured and damaged, and that it was impossible to release her from her perilous situation without the assistance of wrecking tugs, divers, steam-pumps, lighters, etc. (3) That after such loss and stranding the owners of said schooner abandoned her to the underwriters; that notice of such abandonment was duly served, and that subsequently the insurers, by the means of steam-tugs, steam-pumps, and the usual wrecking outfit, succeeded in releasing the said schooner and cargo, and took them to the port of Buffalo, which was the nearest port at which said schooner could receive the necessary repairs; that the expense thereby incurred amounted to the sum of $5,367.60; and that the costs of repairing said schooner will be, according to the survey made, the sum of $3,998.70, one-third new for old having been deducted. (4) That an *ex parte* adjustment was made of the expenses of raising and wrecking said schooner, and taking her to said port of repairs; and that according to said adjustment said schooner was liable to pay the sum of $3,316.86. (5) That if the cost of rescuing said schooner and taking her to said port for repairs without deducting one-third therefrom is to be added to the costs of said repairs, then the plaintiff is entitled to recover as for a constructive total loss; otherwise, he is entitled under the policy to recover only for a partial loss."

The policies are substantially alike. Each of them contains, in usual form, the suing and laboring clause, with the provision that in all cases of loss or damage one-third new for old shall be deducted from the amount of actual cost of repairs, or estimates for same, except on anchors. They also contain the following:

"It is agreed that the acts of the insured or insurers, or their agents, in recovering, saving, and preserving the property insured, in case of disaster, shall not be considered a waiver or an acceptance of an abandonment, nor as affirming or denying any liability under this policy; but such acts shall be considered as done for the benefit of all concerned, and without prejudice to the rights of either party. Further, the insured shall not have a right to abandon in any case, unless the amount which the insurers would be liable to pay under an adjustment as of a partial loss shall exceed half the amount hereby insured. Nor shall detention by the season, or by any other cause, be alleged or allowed as a cause of abandonment. * * * And the valuation of said vessel expressed in this policy shall be considered the value in adjusting total, partial or particular average losses covered by this policy, general and in the nature of general average, losses excepted."

It is claimed on the part of the plaintiffs, respectively, that the loss should be adjusted as a constructive total loss, entitling them to abandon and to recover the whole amount insured, as follows:

| | | |
|---|---:|---:|
| (1) Loss apportioned to the hull under the general average statement, | $3,316 86 | |
| Less owner's uninsured interest, | 663 37 | |
| | | $2,653 49 |
| (2) Net partial loss on hull, | $4,998 38 | |
| Less owners' uninsured interest, | 998 38 | |
| | | 4,000 00 |
| Total loss, | | $6,653 49 |

—Which is more than one-half of the agreed value of the vessel.

On the other hand, it is admitted, on the part of the defendants, that the insurers are liable for the expenses of raising and taking the vessel from the place of the disaster to the port of repairs, so far as charged against the vessel in general average, and also for the net cost of repairs, deducting one-third new for old; but that the two separate charges cannot be added so as to convert the loss into a constructive total loss, or in the alternative, that if the two liabilities are to be added, then that one-third must be deducted, under the terms of the policy, from the cost of raising and taking the vessel to the port of repairs, in order that the adjustment may be as of a partial loss, in which event the whole amount will be less than one-half the agreed value, and therefore not enough to constitute a constructive total loss.

The principles of the law of marine insurance, which would regulate and determine the rights of the parties upon the facts of this case, leaving the special provisions of the policies sued on out of consideration, were authoritatively settled in the courts of the United States by the decision of the supreme court in the case of *Bradlie* v.

*Maryland Ins. Co.* 12 Pet. 378. Upon the subject of the right to abandon, it was then said :

"In many cases of stranding, the state of the vessel at the time may be such, from the imminency of the peril, and the apparent extent of the expenditures required to deliver her from it, as to justify an abandonment, although by some fortunate occurrence she may be delivered from her peril without an actual expenditure of one-half of her value after she is in safety. Under such circumstances, if, in all human probability, the expenditures which must be incurred to deliver her from her peril are at the time, so far as any reasonable calculations can be made, in the highest degree of probability, beyond half value, and if her distress and peril be such as would induce a considerate owner, uninsured and upon the spot, to withhold any attempt to get the vessel off, because of such apparently great expenditures, the abandonment would doubtless be good."

And the statement of the doctrine by Chancellor KENT, 3 Comm. 321, was quoted with approval, that "the right of abandonment does not depend upon the certainty, but on the high probability, of a total loss, either of the property or of the voyage, or both. The insured is to act, not upon certainties, but upon probabilities; and if the facts present a case of extreme hazard, and of probable expense exceeding half the value of the ship, the insured may abandon, though it should happen that she was afterwards recovered at a less expense." "In respect to the mode of ascertaining the value of the ship," it was further said by the court in that case, "and, of course, whether she is injured to the amount of half her value, it has, upon the fullest consideration, been held by this court (*Patapsco Ins. Co. v. Southgate,* 5 Pet. 604) that the true basis of the valuation is the value of the ship at the time of the disaster; and that if, after the damage is or might be repaired, the ship is not or would not be worth, at the place of the repairs, double the cost of the repairs, it is to be treated as a technical total loss." And also : "It follows from this doctrine that the valuation of the vessel in the policy, or the value at the home port, or in the general market of other ports, constitutes no ingredient in ascertaining whether the injury by the disaster is more than one-half the value of the vessel or not. For the like reason, the ordinary deduction, in cases of a partial loss, of one-third new for old from the repairs, is equally inapplicable to cases of a technical total loss by an injury exceeding one-half of the value of the vessel." And it was held in that case that an amount found due to salvors for rescuing the vessel and cargo, and taking them into a port of distress and of repairs, and charged, in an adjustment of general average, upon the vessel as her contributory share, must be counted as an expenditure to be added to the cost of repairs, which, if in the aggregate they amounted to more than half the value of the vessel, entitled the insured to recover for a constructive total loss. That in that case this expense was paid under the name of salvage is immaterial. The expense of raising and towing the sunken and disabled vessel to a port of repairs, no matter by whom paid, would

be considered as part of the loss, and it is equally immaterial that a part of this cost has been constributed upon an adjustment in the nature of general average by the cargo.    If there had been no cargo the whole would have been chargeable upon the vessel as a part of the loss covered by the policy.    It is difficult to see upon what principle it can be claimed that reducing the amount of the insurer's liability, by sharing it with another interest, would change the character of the claim so as to exonerate the insurer altogether.    The point has been expressly ruled in accordance with the decision in *Bradlie* v. *Maryland Ins. Co., supra; Sewall* v. *U. S. Ins. Co.* 11 Pick. 90; in *Ellicott* v. *Alliance Ins. Co.* 14 Gray, 318; and, in England, in *Kemp* v. *Halliday,* 6 Best & S. 723; 2 Pars. Mar. Ins. 133.

A comparison with this state of the law, of the special stipulations of the policy, will show clearly the changes in the rights and obligations of the parties intended to be introduced by their contract.    They are as follows:

*First.* The right of abandonment is made to depend upon the result, and not upon a calculation of probabilities.    No right to abandon is admitted when the loss is not strictly and technically an actual total loss, unless, as it turns out, the expense of restoration exceeds one-half the value.

*Second.* The cost of repairs is to be adjusted for the purpose of determining such excess as if the loss were admitted to be partial; that is, by deducting one-third new for old.    The language is that "the assured shall not have the right to abandon the vessel in any case unless the amount which the insurers would be liable to pay under an adjustment as of a partial loss shall exceed half the amount insured." If the loss in the present case was adjusted on the principle of a partial loss, there would be a deduction of one-third new for old from the cost of repairs, and to that would be added the vessel's proportion of the expense of raising and taking her into the port for repairs. If the whole amount exceeds half the amount insured, the loss by construction becomes total; otherwise, not.    It will be observed that no deduction is made from the cost of raising and navigating the vessel into the port of repairs; for the deduction of one-third new for old in its nature is not applicable to anything but actual repairs.

*Third.* The amount of the loss as thus calculated must exceed, according to the terms of the policy, one-half the amount insured, which is the agreed value of the vessel, the insured being regarded as his own insurer for so much of her value as is not covered by the policies.    By the law as it stood unaffected by the contract, the value, which measured the loss, was the actual value of the vessel at the time and place of the disaster.

In no other particular than these have the parties seen fit by their special contract to alter their rights and obligations as defined by the general law of insurance.    There is consequently nothing in the special provisions of the policy to preclude the insured from recovering

for a constructive total loss, after abandonment, when the amount of the repairs, deducting one-third new for old, added to the expense chargeable to it of raising and taking the vessel to the port of repairs, exceeds one-half its agreed value. This conclusion is not inconsistent with the decisions in the cases of *Greely* v. *Tremont Ins. Co.* 9 Cush. 416; *Orrok* v. *Insurance Co.* 21 Pick. 456; *Hall* v. *Insurance Co.* Id. 472; *Reynolds* v. *Insurance Co.* 22 Pick. 191; *Paddock* v. *Commercial Ins. Co.* 104 Mass. 536, and others cited on behalf of the defendants. The point in those cases applicable to the present argument is that a general average loss cannot be added to the net cost of repairs, so that in case the aggregate amounts to more than half the value of the vessel, the loss may be converted from a partial loss to a constructive total loss; but in them all the rule is strictly confined to general average, technically defined, as accruing by a voluntary sacrifice made by the master in the management of the vessel in the prosecution of her navigation; and in all, the distinction between such losses and those consisting in the expense of raising a sunken vessel and taking her to the nearest port for repairs is maintained and affirmed, as established in the cases of *Sewall* v. *U. S. Ins. Co.* 11 Pick. 90, and *Ellicott* v. *Alliance Ins. Co.* 14 Gray, 318, which are never questioned.

Neither are the cases last named unopposed by any decision of the supreme court of the United States. On the contrary, as has already appeared, they are in exact harmony with the principles affirmed and applied in *Bradlie* v. *Maryland Ins. Co.* 12 Pet. 378; and there is no conflict between that and the case of *McAndrews* v. *Thatcher*, 3 Wall. 347. In that case the contest was between the owners of the ship and of the cargo as to the liability of the latter to contribute towards expenses alleged to have been incurred after the accidental stranding of the vessel for the joint benefit. The judgment of the court against the claim of the plaintiffs for the contribution was upon the ground that "there was no community of interest remaining between the ship and the cargo, when the master, as declared in the statement of the case, abandoned the ship and left her in charge of the agent of the underwriter, after the consignees of the ship had declined to authorize the master to incur any further expense." As elsewhere stated in the opinion in that case, the settled rule is (page 367) "that when a vessel is accidentally stranded in the course of her voyage, and by labor and expense she is set afloat, and completes her voyage with the cargo on board, the expense incurred for that object, as it produced benefit to all, so it shall be a charge upon all, according to the rates [rules?] apportioning general average." And again, (page 371,) it is stated to be a case of general average contribution between ship and cargo, "provided the ship and cargo were exposed to a common peril, and the whole adventure was saved by the master in his capacity as agent of all the interests, and by one continuous series of measures." But even

as regards such expenses, which, in case the whole adventure is saved, would be apportioned according to the rules of general average among all the interests benefited, in case of abandonment of the ship, justified by the actual result, they are thrown upon the underwriter as part of the loss, with the right to compel contribution at his own risk. 2 Pars. Mar. Ins. 289. And Mr. Parsons adds, (page 291:)

"This rule has been held applicable, even if it would give to the insured the power of making his loss partial or total at his pleasure. By an American rule, as we see more fully elsewhere, a loss of more than one-half may be made a constructive total loss by abandonment. Now, if an insured loses by jettison of his goods sixty per cent., and is entitled to receive half of this by way of contribution in general average, and the circumstances are such that he can receive this if he will, the rule above mentioned would give him the right to choose between recovering his contribution and claiming a partial loss of thirty per cent., and transferring this claim to the insurers and abandoning his salvage of forty per cent., demanding of them as for a total loss."

And he adds, notwithstanding the objection of its apparent inequality, that the cases cited show that this rule may perhaps be considered as now an established part of the law of marine insurance, with all the consequences that may result from it.

Where, as in the present case, the expenses of relieving the stranded vessel and taking her into port for repairs are incurred after abandonment, and by the underwriters, they are incidental to the restoration of the vessel, and necessarily go into the account which determines whether the cost of restoration exceeds half the value of the vessel, and consequently whether the owners were justified in abandoning and claiming for a total loss; and although, in such cases, when cargo as well as ship are saved by the expenditure in raising the vessel and taking her into a port of safety, the expenses are to be ratably shared by the interests benefited, upon the principles of general average, it is a case rather of a claim by a stranger to the cargo for salvage for its rescue, than of a general average loss, to be adjusted between ship and cargo for sacrifices made by the master of the former in the performance of his general duty to both.

And in this view a distinct defense is based on the suing and laboring clause. The argument is that the expenses of recovering the property from peril authorized by that clause are agreed to be borne by the parties, the insurers and insured, in proportion to their respective interests, for which share each is bound to the other absolutely, whether the result be successful or not; and that the construction of the abandonment clause, which justifies the plaintiff's claim, deprives the suing and laboring clause of its true significance. The language of the clause in question is that, "in case of loss or misfortune, it shall be lawful and necessary to and for the assured, etc.,   *   *   *   to make all reasonable exertions in and about the defense, safeguard, and recovery of the said vessel, etc., without prejudice to this insurance, etc., and in case of neglect or refusal on the part of the insured, etc., then the said insurers may and are hereby authorized to interpose

and recover the said vessel, or after recovery to cause the same to be repaired, or both, for account of the insured, to the expenditures and amount whereof the said insurance company will contribute according to the proportion the sum insured bears to the valuation aforesaid, and the surplus, if any, paid to or incurred by said insurers,—with the premium note, if unpaid,—shall be a lien upon and shall be recoverable against the said vessel, etc.; but in case this insurance shall be against total loss only, and no claim for the same be sustained, then the whole of said expenditures and amount paid or incurred by said insurers shall be a lien, and recoverable as aforesaid," etc.

It was further agreed, in the clause first quoted, that the acts of the insured or insurers in recovering, saving, and preserving the property insured, in case of disaster, shall be without prejudice to the rights of either, and shall be considered as done for the common benefit. There is nothing, therefore, in the suing and laboring clause which, according to the express agreement of the parties, can be construed as affecting the right of the assured to abandon. In pursuance of the terms by which that right is defined and limited, the very object of the suing and laboring clause was to enable each party to do what was best for both, without prejudice to either; and it contains no obligation on the part of one to refund any expenditure made by the other, except according to their respective interests. That is to say, if the loss is partial only, then the expenses incurred are to be borne by each in proportion to the interests covered by the policy, and those at the risk of the owners. But if the loss, under the terms of the policy, is a total loss, whether actual or constructive, any expenditures made by either constitute a part of the loss, and as by the abandonment the whole interest in the subject of the insurance vests in the insurer, the whole expense falls upon him, without recourse upon the insured. An abandonment, either accepted or justified by the event, executes in full the contract between the parties as of its date, so that no new rights can be acquired by either against the other without further assent. Expenses incurred after that by the insurer are contracts upon his own account alone and for his own interest.

The conclusion is, therefore, that the several plaintiffs are entitled to recover, according to their claim for a total loss, the whole amount of the insurance, less any set-off for unpaid premium. Judgment will be entered accordingly.