### THE LYDIA A. HARVEY.

### TARR v. THE LYDIA A. HARVEY.

(District Court, D. Massachusetts. February 10, 1898.)

#### No. 854.

1. MARINE INSURANCE—SALVAGE BY INSURER.

A vessel was stranded on the beach, so that the tide ebbed and flowed through her, and was deserted by her master and crew. Her owner informed the insurer that he was unable to meet the expense of getting her off, and the insurer employed another to raise and float her, replace her ballast, and tow her to port for $350. The work was performed, the sum paid, and the insurer took an assignment of the salvage claim. *Held*, that the insurer did not act as a voluntary adventurer, but in its own interest, because of the insurance contract, and that it had no claim on the proceeds of her sale.

2. MARITIME LIENS—RESIDUE OF PROCEEDS—NONLIEN CLAIMS.

As against the owner petitioning for payment of the residue of proceeds to him, the court cannot distribute the same in payment of claims not maritime liens.

This was a libel in rem by James G. Tarr against the schooner Lydia A. Harvey. The cause was heard on a question as to the distribution of funds in the registry, resulting from the sale of the schooner.

Edward S. Dodge and Chas. Wolcott, for libelants.

J. D. Bryant and L. E. Griswold, for China Mut. Ins. Co.

W. F. Prime, for Lockwood Mfg. Co.

Carver & Blodgett, for Low and others.

Dana B. Gove & Sons, for petitioner Pigeon.

BROWN, District Judge. This case presents questions of the validity of claims to funds in the registry resulting from a sale of the Lydia A. Harvey. The China Mutual Insurance Company, as assignee, claims a first lien for salvage. December 16, 1896, the Har-

vey was stranded on Plymouth Beach, off the town of Plymouth, in this district, in a place where, though sheltered, and on a soft bed of sand, she was exposed to possible danger of injury from ice. The tide ebbed and flowed through her, and she was deserted by master and crew. Her owner forthwith informed the insurance company (insurer to the amount of $800 on the vessel and $200 on outfits and catch on a valuation of the vessel at $2,000) that he would not get her off, as he was unable to meet the expense. The insurance company employed Sorrensen, a submarine diver and raiser of sunken vessels, to float her, replace her ballast, pick up her anchor, and tow her to Boston, agreeing to pay $350 for the work when performed. The work was done. Sorrensen was paid by the company, and made in writing an assignment of his claim and lien. The company also paid to other persons for a survey, for services, and for calking, additional sums, amounting to $95.42.

I am of the opinion that the insurance company has failed to establish any legal or equitable right to compensation from the fund in the registry. Though there was, probably, no proper abandonment or right to abandon, the company nevertheless interposed for its own interest, and upon the evidence must be regarded as the principal, who, through its employé, and at its own expense, got the vessel off, and brought her to Boston. It acted, not as a voluntary adventurer, but because of its previous contract with the owner, which made it directly interested in the preservation of the vessel. The company was liable, under its policy, for a partial loss. The contention that the loss did not amount to 14 per cent. of the valuation is based upon a deduction of one-third "new for old," which is not permissible in the present case. Potter v. Insurance Co., 3 Sumn. 27, 45, Fed. Cas. No. 11,335; Wallace v. Insurance Co., 22 Fed. 66, 70. Within the limit of the amount insured, its expense cannot be regarded as incurred for the benefit of all, but must be considered as incurred solely for its own benefit. Providence & S. S. Co. v. Phœnix Ins. Co., 89 N. Y. 559, 563; The Clarita and The Clara, 23 Wall. 1, 17. The company must therefore stand upon its own rights resulting from its own acts, and cannot increase or alter them by taking an assignment from its own employés, who did not rely upon the credit of the vessel, and who have been paid. It would certainly lead to great confusion if underwriters who are liable for a loss by stranding should be permitted to get the vessel off, acquire a salvage lien, completely reimburse themselves from the vessel, and compel the assured to sue to recover from them the amount, or a portion of the amount, that the underwriters have received from the vessel.

I find it unnecessary to decide whether the company has paid out anything in excess of the amount of its liability, since, if it has done so, it has only a claim upon the owner, and none upon the fund.

The Non-lien Claims. I think it clear that against the objection of the owner, who petitions for the payment to him of any residue after satisfying the claims secured by maritime liens, the court has no power to distribute the proceeds in payment of claims not maritime liens. The Lottawanna, 20 Wall. 201, 219, 224; The Willamette Valley,

76 Fed. 838, 841, 844. There will be allowed, in addition to the lien claims of James G. Tarr and Sidney W. Oakes, for which decrees have been entered, the lien claim of George W. Smith, which, after correction of error, amounts to $66.43; also the lien claims of Timothy B. Sprague and J. S. & J. H. Marquand. After satisfaction of the above claims, with interest and costs, the residue, after deducting therefrom the amount of $231.91, will be payable to John Clancy, the owner. The sum of $231.91 may, by the consent of Clancy, be paid to the proctor for J. Baker & Co., J. G. Tarr & Bro., and Sidney W. Oakes. The remaining claims are disallowed. A decree may be entered in accordance with this opinion.