### William W. Smith v. Preston Mitchell.

*Assignment for the benefit of creditors: exception of exempt property.*— An assignment for the benefit of creditors is not void on its face for excepting property exempt from execution without specifying it. A bona fide selection is as practicable here as under a levy.

SMITH v. MITCHELL.

*Interference with the property by the assignor.*—Where a general assignment for the benefit of creditors was assailed as fraudulent, it was held, that evidence that, at the time it was made, goods were at a railroad depot, directed to the assignors, [which they claimed and disposed of afterwards, was competent, as having a bearing on the good faith of the assignment.

Evidence that said goods were afterwards sold with the knowledge and assent of the assignee, is competent, as tending to establish fraud.

*Conversion: proof of auction sales as evidence of value.*—Evidence of what the property brought at an auction sale made shortly after the alleged conversion for which suit is brought, is competent as having some tendency to prove its value.

*Conversion: evidence of prior 'liens.*—Trover by assignee for property levied upon by defendant by virtue of executions against the assignor. Held, that evidence on behalf of defendant, that property levied upon was held and sold under a former levy, was admissible, to show that defendant had not damnified the plaintiff, and had not converted the goods.

Held, also, that evidence that goods levied on were held and sold for railroad charges which were a prior lien, would discharge defendant from any liability on account of the goods so sold; *first*, because showing that they were incumbered to their value; and *second*, because showing that he never took or converted them, the lien being adverse, and he never completing his levy by possession.

*General assignment must be of all the property.*—A voluntary assignment for the benefit of creditors, purporting to be general, is void, if it does not fairly and bona fide assign all of the assignor's property which is liable for the payment of his debts.

*Heard April 15th. Decided December 5th.*

Error to Calhoun Circuit.

Mitchell brought suit in trover, to recover the value of certain furniture, which he claimed under a general assignment made to him by Increase A. & William H. Pendleton, composing the firm of I. A. Pendleton & Son, for the benefit of their creditors, and which defendant was alleged to have converted to his own use on 24th August, 1857, the date of the assignment. Defendant justified taking the property as constable, by virtue of executions issued against the Pendletons.

On the trial, the assignment was offered in evidence. It purported to assign " all of our stock in business, goods, chattels, merchandize, bills, bonds, notes, book accounts, claims, demands, and the securities taken for the same; except, however, our household furniture and property exempt by law from execution. The same being enumerated and set forth in a schedule hereto to be attached,

marked schedule A." Defendant objected that the assign-
ment was void on its face, for the reason that the exempt
property was not set apart from the stock, nor reserved,
but was to be set apart by a schedule to be attached:
but the Court overruled the objection.

The schedule of property attached to the assignment
mentioned, among other things, "bill of chairs at depot,
invoiced at $217.50, and freight to be deducted." This
was the only property described as being at the depot,
and no moss was mentioned in the schedule. I. W. Wilder,
a witness for the plaintiff, testified that the assignment was
executed in his presence. "Schedule was made, and I
think attached to the assignment at the time — am not
positive about it. The schedule was with the assignment,
and it is my impression it was attached to it at the time.
I. A. Pendleton, Preston Mitchell and myself were present
at the time. Mr. Pendleton pointed out the furniture to
Mitchell, and they walked around and looked at it. There
was some conversation between them about the value of
some of the articles. Mitchell went on giving directions
to Pendleton for letting the property remain where it
was. Account books and papers were taken from the desk
by Pendleton, and Mitchell took some of them and
looked at them, and handed them back to Pendleton, or
laid them on the desk before him, and Mitchell gave
directions as to opening or keeping new accounts of busi-
ness. I don't think the intimation was very definite; the
purport of it was to keep business separate from the old.
Pendleton stated that he delivered the property to Mitch-
ell: when Pendleton mentioned the property at the depot,
Mitchell made some reply about its remaining there. The
freight was not paid on that. Papers purporting to be
invoices of the property at depot were handed to Mitchell."

On cross examination he said; "Mitchell went to the
shop with me, and the assignment was signed by one, I
think by both, there; books taken down appeared to be

account books used in the shop; don't recollect any other books; papers purporting to be invoices of property at the depot were taken down; other papers folded up like accounts or notes were taken down; my impression is Mitchell looked them over, and it is my impression Pendleton put them back; I saw young Pendleton at the shop before I left. There was some varnish, whitewood lumber, cherry and black walnut there, which Pendleton claimed exempt, and said he was going to work. I think there were two kegs partly full of varnish; may have been three. On being asked, what directions did Mitchell give? he answered; he told I. A. Pendleton to take care of the property, books, papers, &c., and sell what he could, but not on credit; directed the goods at depot to be brought up as soon as money enough should be realized to pay the charges. All three, Mitchell, I. A. Pendleton & Son, were present at the time assignment was delivered. Heard Pendleton tell Mitchell there was the key; Mitchell told Pendleton to keep it. Mitchell had started towards the door; I did not see the key."

I. A. Pendleton testified, that he was of the firm of I. A. Pendleton & Son; that he was at shop at time referred to by Wilder; that articles were pointed out to Mitchell, the assignee, and moved in some instances in the shop so Mitchell could view them; all the property was in the sales room except that at the depot; books and papers laid on the desk and pointed out to Mitchell; of the goods at depot, Mitchell said the goods must remain at depot until money was realized to pay freight, which was something over $40. Invoices of goods at depot were given up to Mitchell; witness gave him up the key; that it was his impression Mitchell took the key to the shop; Mitchell told him he must stay there in the shop, as his business was such he, Mitchell, could not. Mitchell gave him general orders to collect. Mitchell owned the building the goods were in. Witness gave up possession to

Mitchell when he made the assignment. He occupied it under Mitchell, but has not occupied it as his lessee since. Said he did not sell anything before the levy made by defendant, some three or four days after the assignment. That Mitchell went out after goods were shown as above, that he came in the next morning, was there a moment or two, and his impression is he was there every day. That I. A. Pendleton & Son had no moss at the depot at the time of the assignment that witness was aware of.

W. H. Pendleton also testified, that the firm had no moss at the depot, to his knowledge, at the time of the assignment.

The plaintiff having rested, the defendant offered in evidence the executions under which he justified, with indorsements thereon showing levies on the property in controversy, and returns of public sales of some of it, made since the commencement of the present suit. The returns were objected to by the plaintiff, and excluded by the Court.

The defendant then proved by James A. Way that, during the year 1857, he was an agent of the Michigan Central Railroad Company, and had charge of the freight office and depot at Marshall; and the defendant then offered to prove that there were two bales of moss of the value of $50 at said depot, on the 23d and 24th days of August, 1857, directed to I. A. Pendleton & Son, and afterwards claimed by them, and one of them taken away on the first day of September, 1857.

But to the introduction of such testimony, the plaintiff objected, and insisted that the same was irrelevant, and that the assignment did not cover that property; that it did not appear that I. A. Pendleton & Son ever ordered any such property, or property of that kind, but the contrary; and if there was any property of that kind there it does not appear whether it was there for them, or that the assignee knew or had any knowledge or notice of

SMITH v. MITCHELL.

it.   The Court sustained the objection, and the defendant excepted.

The defendant then offered to prove by another witness, that I. A. Pendleton, on the first day of September, 1857, disposed of one bale of moss above referred to, at the depot, in payment of a debt of I. A. Pendleton & Son, and paid said debt in full, and under such circumstances as to leave no doubt it was done with the knowledge and consent of the assignee.   To such testimony the plaintiff objected, for the reason the defendant did not offer to show the property was covered by the assignment, and that it was anticipating the conclusion of the jury upon circumstances proposed to be proved, and that such proposition does not directly show that such transfer and payment was with the knowledge and consent of the assignee ; and the objection was sustained by the Court.

The Court at the same time informed the defendant's counsel, that if they proposed to show that the assignors, or either of them, disposed of any of the assigned property after the assignment, with the consent of the assignee, they might show it.

The defendant then offered to prove by another witness, that the property mentioned in plaintiff's declaration was fairly sold at public auction, in the month of September, 1857, at a constable's sale duly advertised according to the statute, at Marshall, and what prices the said articles brought at such auction, for the purpose of showing the value of the articles.   This evidence was objected to as irrelevant, and rejected by the Court.

The defendant further offered to prove a prior levy on the property to that made by himself, by virtue of another execution against I. A. Pendleton & Son, and that the officer making the same took from him a large share of the property levied upon, to the value of two hundred dollars, and that the defendant never sold the same.   This testimony was also rejected as irrelevant.

12—Mich. M.

The defendant further offered to prove by the witness Way the amount of freight and charges on the goods at the depot, that a portion of them, referred to in the assignment, were openly and fairly sold at public auction, after five days public notice, in April, 1858, to pay freight on the same, and charges of Michigan Central Railroad Company, and what price or prices they brought at such sale. The plaintiff objected to such evidence as irrelevant, and that it was 'incompetent to show what was done with the property after the taking by the defendant; also that it was an improper method of showing value if allowed with that view; also, that such sale, if any was made, was after the commencement of this suit. The Court sustained the objection.

The evidence being concluded, the defendant requested the Court to charge the jury, that the assignment is void on its face, for the reason that it leaves the property under the control of the assignors, to the extent of the exemption, said exempt property not having been set apart previous to such assignment; also that if the jury shall find that the assignors did not fairly, *bona fide* assign all their property liable for the payment of their debts, then the assignment is fraudulent and void against the defendant, who stands in the place of a creditor. Which requests were declined by the Court. The Court did charge, among other things, that if the jury should find that the assignment was made with the intent, on the part of the assignors, to hinder, delay or defraud creditors, then the same is void, whether the assignee knew of such intent or not.

The jury returned a verdict for the plaintiff.

*W. H. Brown* and *C. I. Walker*, for plaintiff in error:

1. The defendant below offered in evidence his own return on the execution, by virtue of which he levied

on the property, to show what disposition was made of the property seized.

This was an official act by defendant, under his oath of office, and from the nature of the case, and its necessity, is admissible, even as against third parties, although made after action brought: — 3 *Cow. & Hill's Notes*, 1083-6; 18 *Vt.* 67; 6 *Fost.* 99; 11 *Fost.* 9.

2. We submit that the Court erred in rejecting the evidence as to the moss at the depot. It seems that plain. tiff below had offered evidence that the assignors had no moss at the depot. Defendant offered evidence, tending to prove that they had such moss, and that, within a few days after the assignment, they, the assignors, disposed of it for the purpose of paying a particular debt, under such circumstances as to leave no doubt that it was done with the knowledge and consent of the assignee.

The testimony certainly tended to show that the assign" ors had certain property belonging to them, and covered by the assignment, which was not mentioned in the schedule, and which they disposed of for their own purposes after the assignment, with the assent of the assignee; and so far had a tendency to prove the assignment to be fraudulent in its character.

The error is in no way cured by the subsequent offer of the circuit judge. The offer is sophistical, and does not meet the proposition made. He will permit it to be proved that the assignors disposed of *assigned* property. But the very thing in controversy was, whether this was *assigned* property, and this was a question for the jury.

3. The Court clearly erred in excluding the testimony offered for the purpose of showing the price for which the articles sold, at a fair advertised sale, at public auction, by a constable.

Such testimony, although not conclusive, is admissible; and there is an especial propriety in its introduction, where the plaintiff is an assignee, whose duty it is to dispose of

the property promptly, and ordinarily in the same manner:
*Doug.* 40; 3 *C. & P.* 344; 6 *C. & P.* 712; 9 *B. & C.*
696; *Sedgw. on Dam.* (1 *Ed.*) 502; 13 *M. & W.* 507; 2
*Hilt.* 137; 20 *N. Y.* 499.

4. There was error in excluding evidence of a lien for
freight and charges, on a portion of the very goods in
controversy, by the R. R. Co., and that a portion was
sold to pay such lien: — 2 *Greenl. Ev.* § 635, note 2; 14
*Pick.* 361; 13 *Met.* 267; 20 *Penn.* 40; 9 *Pick.* 551.

5. We submit that the offer to prove a prior levy on
a portion of the goods, and the disposition of them there-
under, tended to contradict any conversion by the
defendant. When he made his paper levy, they were in
the possession, not of the plaintiff, but of another consta-
ble, by virtue of a levy, and that constable sold the goods.

*Mr. Brown* further argued, that the exception in the
assignment of "our household furniture and property exempt
from execution" rendered it void. The exception was *part-
nership* property, because partnership property only had
been assigned. And the construction of the assignment
must be, that *no* household furniture was assigned.

*H. A. & L. G. Noyes* and *Hughes & Wooley*, for defend-
ant in error:

1. There are no illegal reservations in the assignment. It
excepts only such property as is exempt from execution.
The evident intention was to convey all their property not
exempt from execution.

But even if the assignment is to be construed as except-
ing household furniture liable to execution, its validity is
not affected. It would be good and valid as a partial
assignment: — *Burr. on Assignments,* 97; 13 *S. & M.* 22;
5 *T. R.* 420.

Nor is it necessary that the exempt property should be
specified: — *Hollister v. Loud,* 2 *Mich.* 323.

It was not allowable for the Court to say, that the assignment was void on its face, unless it contained such illegal provisions as are not reconcilable on any possible hypothesis with an honest intention; and if the instrument can by any possible construction be sustained, it is the duty of the Court to give it that construction: — *Oliver v. Eaton*, 7 *Mich.* 108; *Gay v. Bidwell*, 7 *Mich.* 523; *Nye v. Van Husan*, 6 *Mich.* 329.

2. The Court correctly rejected the return of the defendant on the executions.

All that was objected to, was the disposition which the defendant had made of the property *since* the commencement of this suit.

3. The order in which proofs are to be received, must, in jury cases, be left legally to the discretion of the Court; and it is the duty of the Court to compel counsel either to introduce their proof in such order that every part of it shall appear from the case itself to be relevant; or, if this is departed from, to require counsel when a fact, the relevancy of which does not appear, is offered, to give some assurance to the Court that they intend to connect the fact with the case so as to make it relevant: — 1 *Greenl. Ev.* § 57..

The bill of exceptions shows that the facts offered to show that the assignors disposed of assigned property were offered as evidence in themselves, without anything to show the knowledge or assent of the plaintiff (assignee), and that the defendant substantially admitted that he could not charge the assignee with knowledge of the transaction. The Court laid down this rule:

"That the defendant might show that the assignors, or either of them, disposed of the assigned property after the assignment, with the consent of the assignee."

This rule, we insist, is the correct one; and the Court therefore, rejected the evidence, the defendant not being

able to say that he expected to show such consent of
the assignee.

There is no error, then, unless the defendant was
entitled to show the acts of the assignors after the assign-
ment, done without the knowledge or consent of the assignee;
and upon this question the authorities are very clear and
uniform: — Burr. on Assignments, 401; 6 Barb. 94; 1
Met. 10.

4. The true rule of damages was the market price,
and this could only be proved by the opinion of witnesses,
and such transactions as go to make up the market value.
A sale on execution, whether of the same or similar pro-
perty, was not admissible. The price obtained at the
execution sale is not itself the rule of [damages, and is
too remote to be evidence of the market value: — 2 Pars.
on Cont. 482.

5. The Court did not err in refusing evidence that the
property, after it was converted by the defendant, was
taken away from him, by virtue of a senior levy. The
Court properly refused to try any collateral issues between
third parties, and it is no excuse for one wrong doer that
the property has been taken away from him by another.

6. The sale by the railroad company, for freight, was
utterly irrelevant, either for the purpose of showing market
price or in mitigation. It may possibly have been com-
petent to show the amount of the lien on the goods for
the freight, but it does not appear that this was refused,
and if it was, no error is assigned for such refusal.

7. The refusal of the Court to charge as requested
must be taken in connection with what he did charge on
the subject; and the whole instructions to the jury upon
the subject were correct:—Burr. on Asst. 300 and 301.

By THE COURT:

The assignment is not void on its face for excepting
property exempt from execution, without specifying it. A
bona fide selection is as practicable here as under a levy.

SMITH v. MITCHELL.

Evidence that goods were at the railroad depot, directed to the insolvent firm, which they claimed and disposed of after the assignment, was improperly excluded, as it had a bearing on the good faith of the assignment as a general assignment.

The sale of said property by the firm, and evidence showing the assignee's knowledge and consent, should not have been excluded, as it bore upon the question of fraud.

Evidence of what the property brought at auction is admissible, as having some tendency to prove value.

Evidence that the property levied on was held and sold under a former levy, was admissible to show that the constable had not damnified the claimant, and had not converted the goods.

Evidence that goods levied on were sold for charges which were a prior lien, would discharge the constable from any liability on account of those goods, on two grounds : *first*, that they were incumbered to their value; *second*, that he never took or converted them; the lien being adverse, and he never completing his levy by possession.

The Court erred in not charging that the assignment was void if it did not fairly *bona fide* assign all of the assignors' property liable for the payment of their debts.

*Judgment reversed, and new trial ordered.*