### FIREMEN'S CHARITABLE ASS'N v. ROSS et al.

(Circuit Court of Appeals, Fifth Circuit. December 12, 1893.)

#### No. 146.

SALVAGE—CITY FIRE DEPARTMENT.

The company which furnished the men and equipment that constitute the fire department of New Orleans is required by ordinance and by contract to take all proper measures to extinguish fires and to preserve order, while a further ordinance provides that "in no event shall the fire department be permitted to charge for services rendered in extinguishing fires on shipboard, or to claim salvage." After a ship had loaded at New Orleans, and had begun her voyage to Europe, fire was discovered in her cargo, and she put back to the city, where, at the request · her agents, the fire department, by the use of its engines, extinguished the fire. *Held*, that the fire department could make no claim for salvage.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel by Firemen's Charitable Association against Wm. Ross & Co., owners of the steamship European, for salvage. The lower court dismissed the libel, and libelant appeals.

The steamship European, having taken on board a cargo of cotton and grain at the docks of New Orleans, left that city on the 27th of May, 1891, for a voyage to ports of Europe. Within a few hours after leaving the dock, and when about 90 miles down the river, a fire was discovered in the ·cotton between decks, upon the discovery of which the master turned his vessel up the river towards the city, and at the first opportunity sent a boat ashore to the telegraph office and notified his agent that the ship was on fire, and would return to the city, requesting him to make such arrangements as he considered necessary. In accordance with this request the agent of the vessel saw a representative of the underwriters, and these two gentlemen telephoned the chief of the fire department, and requested that he have one or two engines at the wharf when the ship should arrive, in order to render assistance if needed. The chief of the fire department replied that he would have them there promptly. The ship arrived at the wharf at about half past 3 o'clock a. m., where the chief of the fire department had in readiness two steam fire engines, and the companies, ready to go to work. The master of the vessel, hoping to be able to extinguish the fire by the use of his own steam, continued using that some six hours after the arrival of the vessel at the wharf in endeavoring to subdue the fire, but finally, finding it impossible, and being informed that the fire department would make no charge for salvage for services rendered the vessel in extinguishing the fire, permitted them to go to work. Two more steam engines were subsequently employed, and they worked alternately two at a time for about twenty hours, when the

fire was fully extinguished. The agent of the ship offered the fire department as a gratuity the amount of $200, which, being refused, was increased to $400. This they also refused, and brought their suit by libel for salvage in the United States district court. Upon the hearing the libel was dismissed at the cost of the libelant. From this decree an appeal has been taken to this court.

W. S. Benedict, for appellant.

J. McConnell, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) The question in this case is whether the service rendered by the Firemen's Association exceeded the duty imposed upon it by its employment in the public service. In determining this question it is necessary to examine the relation existing by contract and agreement between it and the city, and ascertain what that duty was. The ordinances of the city of New Orleans in regard to the employment of a fire department consisted of a General Ordinance No. 7,346 of the Administration Series, enacted September 28, 1881, providing for the obtaining of bids from different companies for providing the city with the apparatus and the service of employes for the protection of the city from fire. After enumerating the different officers and men for such employment, and the different engines, horses, hose, and other apparatus that shall be employed, it provides that they shall take all proper measures for the extinguishing of fires and preservation of order and laws according to ordinance regulation respecting fires. Subsequently, on the 10th of August, 1883, Ordinance No. 7,346 was amended by Ordinance No. 396, which, among other things relating to the duty of the department in event of a fire on shipboard, provides that "in no event will the fire department be permitted to charge for services rendered in extinguishing fire on shipboard or claim salvage." On the 11th of August, 1886, there was enacted Ordinance No. 1,890, Council Series, re-enacting Ordinance 7,346 with some alterations and modifications, and authorizing the mayor to enter into notarial contract with the Firemen's Charitable Association in accordance with the provisions of Ordinance 7,346 as amended. Under these ordinances, on the 14th of September, 1886, the mayor of New Orleans entered into a formal contract with the Firemen's Charitable Association, appellant herein, that for the amount of $160,000 per annum said Firemen's Association would provide such equipment and apparatus, and insure a prompt and efficient service in the extinguishing of fires in the first, second, third, and fourth districts in accordance with the provisions of Ordinance 7,346 as then amended. We find nothing that would directly or by implication repeal Ordinance 396, and consider that it must be recognized as in force at the time of this contract, and that such contract was made in contemplation of and in accordance with such amendment then existing. This amendatory ordinance shows plainly that fire on shipboard had been contemplated and provided for. In accordance with it, the Firemen's

Association was prohibited from charging or claiming salvage for such services. This view of the case we consider is sufficient to determine the questions at issue, and although unnecessary to review the general question of the rights of firemen who claim salvage for the performance of such duty, or to compare and review the numerous cases cited, it may not be amiss to examine briefly the circumstances of some of those cases in which salvage has been awarded for such services, and which have been relied upon in this case. In the case of The European, 44 Fed. 484, the fire was not within the city of Key West, nor did it expose any of the property or wharf of the city to danger until permitted to come to the dock upon a definite and positive contract and agreement that the firemen should be employed to render services for a compensation. The vessel in that case had in no way had any connection with the city as one of its commercial agencies. It had had no business connection in any way with it; nor was it, nor had it been, a source of profit or emolument in any way to the city, or any of the citizens. In that case the firemen received no compensation for their services as such from the city or from any individual, and they were under no contract, any more than was implied by their organization, that they would protect the property of the city and citizens from fire as far as they might be able. Without a contract for aid from the firemen the steamship would not have been permitted to come to the wharf. In that case it was not considered that it was the duty of the firemen as such, any more than it was that of private individuals, to render any service to the property. It was the same in the case of The Huntsville (Dist. Ct. S. C. 1860), Fed. Cas. No. 6,916. In that case Judge Magrath says:

"If the fire had occurred while the Huntsville was lying at one of the docks of the city, if she had been brought to the city by the authority of the mayor, without the addition of any other circumstance, the law in such cases created for the fire department a plain, positive duty, for the performance of which they were legally bound, and upon the performance of which they became entitled to certain compensation from the city of Charleston; but she had been brought to the city upon the express condition that the fire department would take under charge the burning vessel, protect the adjacent property, and surrender all claim to compensation from the city for the service they might render."

In the case at bar the steamer had taken in a cargo at the docks of New Orleans, had paid wharfage dues and large disbursements at the city, and was, for the time being, one of the commercial agencies by which the products of the country passing through that port were being exported. She had left the wharves a very few hours before, with probably the fire smoldering in her cargo. Had the steamship returned to the wharf without any notice being given to the fire department, or understanding had of her coming, could that have changed the legal duty of the firemen? We think not. It was the duty of the association under its contract to do all within its power within the districts mentioned to extinguish fires, and, had there been no positive enactment specifying its duty in regard to fires on board ships, the safety of the property of the city and its citizens, as well as the general principle that for all police pur-

poses a ship at the wharf is within the city, would bring this case within that duty. We consider the case comes plainly within the principle laid down in Davey v. The Mary Frost, 2 Woods, 306, Fed. Cas. No. 3,592, and declared in The Suliote, 4 Woods, 21, 5 Fed. 99, and not within that of The European and The Huntsville, and the decree dismissing the libel is affirmed, and it is so ordered.