## WILSON et al. v. PERRIN.

### (Circuit Court of Appeals, Sixth Circuit. June 5, 1894.)

### No. 181.

**1. FEDERAL COURTS — STATE LAWS AS RULES OF DECISION — CHATTEL MORTGAGES.**

On the question of the validity of a chattel mortgage reserving the mortgagor's exemptions from execution under the laws of the state, the settled local law controls.

**2. CHATTEL MORTGAGES — VALIDITY — RESERVATION OF MORTGAGOR'S EXEMPTIONS FROM EXECUTION.**

By the law of Michigan, a mortgage of a stock of goods, subject to all exemptions from execution to which the mortgagor is entitled under the laws of the state, is not invalid, even as to a creditor garnishing the mortgagee before a separation of the exempt portion, as the exemption law

furnishes the means of separation and identification, and the mortgagee takes a defeasible title to the entire stock, subject to be defeated by a selection of the exempt goods when made by the mortgagor.

In Error to the Circuit Court of the United States for the Western District of Michigan.

This was an action by Edward B. Wilson and others against George T. Bruen, in which a writ of garnishment was issued against Joel J. Perrin, to whom Bruen had given a mortgage of his goods. Judgment was rendered for plaintiff against defendant Bruen, but on trial of the issue as to Perrin the judge directed the jury to find for him, and judgment for Perrin was entered on the verdict. Plaintiffs brought error.

Fletcher & Wanty, for plaintiffs in error.

E. M. Irish, for defendant in error.

Before TAFT and LURTON, Circuit Judges.

LURTON, Circuit Judge. The question involved upon this writ of error concerns the validity of a certain chattel mortgage executed by George T. Bruen, who was a merchant doing business in the city of Kalamazoo, Mich., to the appellee, Joel J. Perrin. It was made for the purpose of securing an indebtedness of $14,-974.36, which amount was due by Bruen to Perrin. The property mortgaged consisted of the entire stock of dry goods, with the furniture and other fixtures usually found in a dry-goods store, and also two horses, a buggy, a cutter, and certain harness. It was made on the 31st day of August, 1893, and was delivered to Perrin on the 2d day of September following, who on that date took possession of the property described in it, and on the 1st day of the following November he sold the entire property so mortgaged for the sum of $14,500.

The appellant Edward B. Wilson, upon the assumption that the mortgage was void, and being a creditor of the mortgagor Bruen, began a suit against him in the circuit court of the United States for the western district of Michigan on the 13th day of September, 1893, and, under the practice in Michigan, sued out a writ of garnishment against Perrin, the mortgagee, who was then in possession of the goods. This writ of garnishment was taken out under section 8091 of Howell's Annotated Statutes, and is the same statute considered and construed in Treusch v. Ottenburg, 4 C. C. A. 629, 54 Fed. Rep. 867. On October 17, 1893, a judgment was rendered in favor of the plaintiff Wilson against the defendant Bruen for $14,192.22. The case then came on for trial against the garnishee defendant, Perrin.

The contention of the plaintiff was and is that the mortgage was void for uncertainty. The granting part contained this clause:

"All the goods, chattels, stock in trade, fixtures, and chattels and merchandise of every name and nature, now in the store occupied by said first party, and known as '125 West Main Street,' in said city of Kalamazoo, being the entire stock of dry goods and similar lines carried by said first party, together with all tables, counters, and two portable furnaces in said store; also, two horses known as 'David' and 'Dick,' and the carriage horses driven by said

first party, one single top buggy, one two-seat surrey, one set double harness, one single harness, one cutter, and all blankets and robes used in connection with said horses and carriages by said first party; also, the safe in said store. The said party of the first part also grants, bargains, sells, transfers, and assigns all the book accounts and bills receivable now on his books kept in connection with the business he has been conducting in said store, and owing to him, due and to become due, unto said second party, and authorizes said second party to collect the same in his own name, and to apply all amounts collected, less the expense of collection, upon the indebtedness already accrued upon the notes which this mortgage is given to secure."

At the conclusion of the instrument there is to be found the following clause:

"The surplus or residue, if any, to belong and be returned to said first party; it being understood that this mortgage is made subject to all exemptions from execution to which said first party may be entitled under the laws of the state of Michigan, and that his exempt interest is not covered by this mortgage."

The judge presiding in the circuit court instructed the jury that the provision reserving the mortgagor's exemptions under the law of Michigan did not invalidate the mortgage, and that they should return a verdict for the defendant.

The contention of the learned counsel for the appellant is that this "was not a mortgage of the entire stock of goods, including the exempt portion, with an added clause that the exempt portion might afterwards be taken out, but it was only a mortgage of that portion which should be left after the exempt portion had been separated." The insistance, therefore, is that inasmuch as the mortgagee was garnished before a separation of the exempt portion had been made, there was no means to determine which portion of the stock of goods was conveyed, and which was not.

Under the exemption laws of Michigan, merchandise to the value of $250 is exempt from execution in the hands of a merchant. The trial judge was of the opinion that the question thus presented was to be determined by the law of Michigan. If such a mortgage is valid either under the statute law of that state, or by the well-settled law of the state as declared by its highest courts, then we quite agree that the local law is controlling. Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679; Means v. Dowd, 128 U. S. 273, 9 Sup. Ct. 65; Union Nat. Bank v. Bank of Kansas City, 136 U. S. 223, 10 Sup. Ct. 1013; Etheridge v. Sperry, 139 U. S. 276, 11 Sup. Ct. 565. In the case last cited the opinion was by Mr. Justice Brewer. The case involved the validity of a chattel mortgage made in Iowa. After considering the decisions of the supreme court of that state which bore upon the question involved, the court came to the conclusion that the mortgage was valid under the law of Iowa. In discussing the question as to whether its validity was controlled by the law of the state in which the instrument had been made, the court said:

"The matter is not one of purely general commercial law. While chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity. They are instruments for the transfer of property, and the rules concerning the transfer of property are primarily, at least, a matter of state regulation. We are aware that there is great diversity in the rulings on this question by the courts

of the several states, but, whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein." Pages 276, 277, 139 U. S., and page 565, 11 Sup. Ct.

It becomes, therefore, necessary that we shall ascertain what is the settled local law, as evidenced by the decisions of the highest courts of the state of Michigan.

In the beginning we may as well say that we attach no particular importance to the suggestion that the conveyance is limited to what should be left after the exemptions should be set apart. The conveyance is of the entire stock of merchandise, subject to the mortgagor's right of exemption. This is the plain and obvious meaning. As to the exemptions, it would seem that the mortgagee would take a defeasible title, subject to be defeated upon separation of the statutory amount of exemptions from the stock.

In the case of Hollister v. Loud, 2 Mich. 323, an assignment in trust to secure certain creditors was attacked upon the ground that the assignors "reserved from the general mass of the property such of it as was by law exempt from execution." This was held not to affect the deed. The court, as to this, said:

"As to the property which was for the time being withheld, and which was allowed to the assignors by the assignees as being exempt by law, we say, if the property was not exempt, it, at the least, was assigned, and vested in the trustees. The assignees must settle that question with the assignors. The creditors will hold them responsible if the property was not exempt. It was not done secretly. The parties attempted to act under the law."

We see no substantial difference between the legal effect of the language used in the mortgage before us and that sustained in Hollister v. Loud.

In Smith v. Mitchell, 12 Mich. 180, an assignment was attacked as void because it purported to convey all of the assignor's stock in business, goods, chattels, merchandise, etc., "except, however, our household furniture, and property exempt by law from execution." The court said:

"The assignment is not void on its face, for excepting property exempt from execution without specifying it. A bona fide selection is as practicable here as under a levy."

To say that certain of the property which would pass under the general description is not covered by the conveyance, because of the mortgagor's exemptions, is nothing more than what is meant when out of the conveyance is "excepted" or "reserved" the bargainor's exemptions.

In Brooks v. Nichols, 17 Mich. 38, the assignment seems to have been a general one, and to have included all of the assignor's property, real and personal, "saving and excepting such as is exempt from seizure and sale under execution by the laws of the state." Cooley, C. J., in pronouncing the opinion of the court as to the effect of such an exception, said:

"We are of opinion that the circuit judge erred in not rendering judgment for the plaintiff on the special verdict. That verdict established the bona fides of the assignment of McDonald, and the only question that could remain

was whether it was void in law by reason of the omission to select out the exempt property. This question we regard as settled by the decisions of this court in Hollister v. Loud, 2 Mich. 323, and Smith v. Mitchell, 12 Mich. 180. The supposed difficulty of sustaining an assignment which assumes to transfer property not separated from a larger quantity is not met with in these cases. The assignment is in effect a transfer of the whole property, subject to a right in the assignor to select out a certain portion or certain articles, which the law, on the selection being made, absolutely sets aside for the benefit of himself and his family. The assignment passes for the benefit of creditors the same interest, precisely, which an officer would seize by virtue of execution, and there is no more difficulty in making the selection of exempt property in the one case than in the other. The principle is not new. Transfers of the debtor's property, under bankrupt and insolvent laws, are subject to the like right of selection, and we are not aware that any difficulty has been supposed to exist in the title of the assignee in those cases. He succeeds to the rights of the bankrupt or insolvent; acquiring, however, so far as exempt property is concerned, a defeasible title, which is divested when the selection is made. The trustee in a voluntary assignment stands on the same footing, and is entitled to the like protection. The judgment of the court below should be reversed, and judgment rendered for the plaintiff for six cents damages, and the costs of both courts."

A distinction is suggested to exist as to the effect of such an exception when found in a chattel mortgage, and the cases of Giddey v. Uhl, 27 Mich. 94, and Richardson v. Lumber Co., 40 Mich. 203, are cited. We find nothing in either of these cases in the slightest degree justifying such a distinction.

In Giddey v. Uhl, cited above, the chattel mortgage in question described the mortgaged property as follows:

"All the following described household furniture and personal property now upon the premises No. 25 George street, in the city of Detroit, owned and occupied by the Whittleseys aforesaid, viz. 1 sofa, 1 lounge, 2 marble-top tables, 2 easy chairs, 3 parlor chairs, 1 black walnut center table, 2 card tables, 1 whatnot. 2 cane chairs. 1 secretary, 1 lounge, carpets, bedding, bed-room furniture, and other personal property in and about said house and premises, except herefrom such personal property as is exempt from execution by the laws of the state of Michigan, to wit, stoves in use, family pictures, library and school books, clothing, provisions, fuel, and sewing machine, also excepting household goods, furniture and utensils therein, of the value of two hundred and fifty dollars."

Christiancy, C. J., as to the effect of the reservation, said:

"It is insisted by the plaintiffs in error that the exception contained in the mortgage, of household goods, furniture, and utensils to the value of two hundred and fifty dollars renders the mortgage entirely uncertain as to the property intended to be mortgaged, and that the mortgaged property cannot, for this reason, be identified; and, if this exception applies to and affects the specially enumerated articles, this may be a very pertinent objection, or might be so if it did not appear that the mortgagors had at the time two hundred and fifty dollars' worth of goods, furniture, and utensils besides the enumerated articles and those exempt from execution. But, construing this mortgage in the light of the facts found, we think it appears with reasonable certainty that this exception was intended to apply to the property mortgaged by the general description only, and not to the articles specifically enumerated. We think the intention was to mortgage the specific articles unconditionally; that the general description which follows the specific enumeration was intended to give so much further security as the property thus generally described would give, after deducting from it what was exempt from execution, and two hundred and fifty dollars' worth of household goods, furniture, and utensils besides. This was the construction adopted by the circuit judge, and we think it clearly correct."

In the case of Richardson v. Lumber Co., above cited, there was a contest between two mortgagees, claiming under instruments of different dates. The mortgagor owned a large quantity of logs in Thunder Bay river. At the time of the execution of the first mortgage, it appears "they had over a million feet of logs marked 'O dot K,'" and gave a chattel mortgage on "one hundred thousand feet of white pine saw logs now on the North Branch, so called, of Thunder Bay river." "These logs were further described as having been cut during the winter of 1873–74, but the particular logs mortgaged, or intended to be, were in no way designated, described or separated from the entire mass bearing the same mark." Subsequently, the mortgagors gave another mortgage upon the entire mass of logs, and thus the second mortgagee acquired an interest before any separation or any designation of the logs first intended to be mortgaged had been made. The court held that inasmuch as no separation had been made, and inasmuch as the mortgage furnished no means and made no provision by which the logs mortgaged might be separated from those not mortgaged, the subsequent mortgagee of the entire mass was entitled to preference.

We see nothing in either of these cases that in the least weakens the force and effect of the rule as declared in the earlier cases, which we have heretofore cited.

Under section 7686, How. Ann. St., the mortgagor was entitled to select from his stock in trade goods and merchandise to the value of $250. The selection is to be made by the debtor entitled to the exemption. Brooks v. Nichols, supra; Town v. Elmore, 38 Mich. 305. Thus, we have the means of separation and identification furnished by the statute under which the reservation is claimed. This obviates all the difficulties pointed out by the court in Richardson v. Lumber Co., supra, and which operated to make the mortgage of part of a mass void as incapable of identification. "Certum est quod certum reddi potest."

The effect of the mortgage involved in this case was to convey to the assignor the entire stock of merchandise, subject to the right of the mortgagor to select therefrom goods to the value of $250; the mortgagee taking a defeasible title to the entire stock, subject to be defeated by·a selection of the exempt goods, when such selection should be made by the mortgagor or his agent. We see no difficulty, whatever, under the well-settled law of Michigan, in concluding that such a mortgage, subject to the debtor's right of exemption, affords no more difficulties in a separation of the property mortgaged from that which is exempt than in the case of a levy, or in the case of a bankruptcy, or in the case of a general assignment for the benefit of creditors.

The judgment must therefore be affirmed.