THREE STATES LUMBER CO. v. BLANKS.

(Circuit Court of Appeals, Sixth Circuit. December 1, 1904.)

No. 1,319.

1. REPLEVIN—EXECUTION OF WRIT—ESTOPPEL OF PLAINTIFF.

A plaintiff in replevin who has obtained possession of property through the writ is estopped to claim that it was wrongly issued or executed, or to contradict the marshal's return.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The question of what will excuse a plaintiff for nonreturn of property replevied, on his failure in the action, is one of general law in Tennessee, and the decisions of its Supreme Court thereon are therefore not binding on a federal court.

3. REPLEVIN—LOSS OF PROPERTY TAKEN—LIABILITY.

Under Shannon's Code Tenn. § 5144, which gives a plaintiff in replevin, in case his title is not sustained, the option to return the property or to pay its value as fixed by the jury, the fact that the return of the property has become impossible does not relieve plaintiff from liability for its value.

4. SAME.

Plaintiff replevied lumber which was on a barge in the Mississippi river. The barge afterward sank, and plaintiff caused the lumber to be loaded on another barge, which it had towed to a different place, where it filed a libel for salvage and towage, and recovered a decree by default, for the satisfaction of which it caused the lumber to be sold. On the trial of the replevin suit it was determined that plaintiff had no title to the lumber. *Held*, that the sale at its own instance could not be set up as a defense to defeat a judgment for its value.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

The plaintiff in error instituted an action of replevin in the court below to recover 250,000 feet of lumber which it claimed had been unlawfully taken out of its possession by the defendant. The writ was returned as executed "by taking the within described property out of the possession of the within named H. B. Blanks and delivering the said property to O. H. Scoggins, agent of the Three States Lumber Co. * * *" The defendant, by special plea, admitted plaintiff's title to 15,000 feet of lumber so replevied, and pleaded the general issue as to the remainder. Upon the issues joined, the jury found for the defendant as to 235,000 feet of lumber, and assessed the value at time of taking at $2,820 and interest thereon from that time, amounting to $241.11. They also awarded the defendant $822.50 as damages for the seizure and detention. A judgment was thereupon rendered for the return of the lumber so assessed, or its value, with interest, and for the damages for wrongful detention, as assessed by the jury. From this judgment the plaintiff has sued out this writ of error.

W. A. Percy, for plaintiff in error.

Tim E. Cooper, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Many errors have been assigned, but in the argument those which

¶ 2. Conformity of practice in common-law actions in federal courts to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.

are relied upon may, in substance, be reduced to two: (1) That the court erred in not instructing the jury to return no verdict for the return of the lumber replevied, nor for the value, nor for any damages for detention. (2) That the court erred in not instructing the jury that any verdict in favor of the defendant must be limited to the market value of the lumber replevied on the day of its seizure, less a pro rata part of the award to plaintiff as salvage in a certain admiralty proceeding against same, to be mentioned hereafter.

That the plaintiff did not have the title or right of possession or any sort of special property in the 235,000 feet of lumber seized under its writ of replevin was conceded, and the only controversy was in respect of the character of the judgment in favor of defendant. In Tennessee the action of replevin is regulated by statute, and the plaintiff is required to give a "bond in double the value of the property, payable to the defendant, conditioned to be void if the plaintiff abide by and perform the judgment of the court in the premises." Shannon's Code Tenn. § 5131. By section 5144 it is provided that, "if the issue is found for the defendant, or the plaintiff dismisses or fails to prosecute his suit, the judgment shall be that the goods be returned to the defendant, or, on failure, that the defendant recover their value, with interest thereon and damages for the detention, the value of the property and the damages to be assessed by the jury trying the cause.   *   *   *"

The defense against a judgment in favor of the defendant for the value of the property and for damages for detention was grounded upon the following circumstances:

The lumber seized was upon a barge lying at the bank of the Mississippi river. The defendant had contracted to sell to the Chicago Mill & Lumber Company a large amount of lumber, and had loaded upon a barge belonging to that company something more than 400,000 feet when the marshal executed the plaintiff's writ of replevin. This writ he returned "as executed as the law directs by taking the within described property out of the possession of the within named H. B. Blanks, and delivering said property to O. H. Scoggins, agent of the Three States Lumber Company, for the said Three States Lumber Company." Although there was upon the barge considerably more than 250,000 feet of lumber, no separation appears to have been made, and there was evidence tending to show that, although the plaintiff's agent claimed possession of only 250,000 feet, he took possession of the barge and all of the lumber thereon, and made no effort to separate that seized or claimed from that not so claimed. However defective such a levy may be as against the defendant or a stranger, in a proceeding where such a question might be properly made, it is clear that if the plaintiff obtained the actual possession of the lumber of the defendant under his replevin writ, whether by right or by wrong, he is, for the purposes of the questions here to be considered, estopped to say that the writ was wrongly issued or executed, or to contradict the return of the marshal.  6 Bacon, Abridgment (Wilson's Ed.) star pages 59, 60.

This barge, while lying at the bank of the river, sank through stress of storm, and about half of the lumber was submerged. The plaintiff thereupon raised the barge; and loaded the lumber upon other barges hired by it, and carried the lumber to Cairo, Ill. There the plaintiff

caused the entire 400,000 feet of lumber to be libeled in a proceeding started by itself in the District Court of the United States for the Southern District of Illinois, for the purpose of enforcing against same a claim in favor of itself for salvage and towage. By due course of proceedings in said cause, said lumber was seized, and a salvage allowance of $1,833.29 made in favor of the libelant, and said lumber was exposed and sold under decree of said court for the sum of $2,000. After satisfying costs and libelant's salvage claim there remained in court the sum of about $50 for the owners, whoever they may be, who had shared in the benefit of the libelant's salvage services.

The decree of the district court in this proceeding is now relied upon as a complete defense to any demand of the defendant for a judgment for the return of the lumber seized, or for its value, or for its detention, although the plaintiff had no shadow of title or right to the lumber taken under its writ of replevin. The conclusiveness of that decree as a decree in rem is not and cannot be collaterally disputed. By that decree it is effectually determined that the plaintiff had rendered salvage services to the extent of $1,833.29, and that the same could be enforced, at its demand, against the lumber in question. Under the sale made in pursuance of that decree, the title and right of possession have effectually passed to the purchaser.

The question we must decide is whether that proceeding operates as a discharge of the plaintiff's obligation to prosecute his suit with effect, or return the property replevied to the defendant, or pay its value, and damages for detention. Replevin is one of the most ancient and well-defined writs known to the common law. The plaintiff in replevin does not take or hold the goods replevied as a bailee or custodian, nor are the goods in any sense in custodia legis. It is an ancient common-law proceeding by which the owner recovers possession of his own. It is defined in the old books as "a redelivery to the owner, by the sheriff, of his cattle or goods distrained upon any cause, upon surety that he will pursue the action against him that distrained. If he pursue it not, or if it be adjudged against him, then he who took the distress shall have it again, and for that purpose may have a writ of retorno habeno." 6 Bacon, Abridgment (Wilson's Ed.) side page 52. By the statute of Westminister II, c. 2, § 3, 13 Edw. I, the sheriff was required to take pledges from the plaintiff in an action of replevin that he would prosecute the suit and return the property replevied if the court should so direct, and by a later statute of the time of George II he was required to take a bond with sureties that he would prosecute without delay, and for the return of the property in case its return should be awarded. 24 Am. & Eng. Ency. Law (2d Ed.) p. 529. If the goods were not restored under the writ of retorno habendo, this was a breach of obligation to return, and the return of elongata or eloignment by a sheriff on a writ de retorno habendo is conclusive in an action on the replevin bond. Caldwell v. West, 21 N. J. Law, 411. The plaintiff's possession of the goods is for himself. His pledges or sureties are substituted for the goods, and he holds subject to his own disposition, free from any lien in behalf of his sureties. 6 Bac. Abr. *67. His failure to establish his title fixes his status as a wrongdoer. Being a wrongdoer, he is not permitted to set up even a blameless loss or de-

133 F.—31

struction of the defendant's property, while wrongfully withheld from him, as a discharge of his obligation to return the goods or pay their value and damages. Cobbey on Replevin, § ——; Shinn on Replevin, § 812; Am. & Eng. Ency. of Law (2d Ed.) p. 536; 6 Bacon, Abridgment (Wilson's Ed.) side page 67; Wells on Replevin, §§ 455, 601. The case of Whitfield v. Whitfield, 44 Miss. 254, cited to the contrary, is overruled by George v. Hewlett, 70 Miss. 2, 12 South. 855, 35 Am. St. Rep. 626; Carpenter v. Stevens, 12 Wend. 589, is also overruled by Suydam v. Jenkins, 3 Sandf. (N. Y.) 643. The other Mississippi cases cited in brief of plaintiff in error are likewise explained away in George v. Hewlett, cited above.

The Tennessee Code provisions prescribing the bond to be executed and the judgment to be rendered when the plaintiff fails in his suit do not materially depart from the common law and the terms of the ancient statutes requiring the plaintiff to give security for the return of the property if it shall be so adjudged, unless it be in respect to interest upon the value, and the option to the plaintiff to return or pay value. The statute in no wise deals with the consequence if the plaintiff is unable to return by reason of the loss or destruction of the property replevied. The Tennessee Supreme Court in Bobo v. Patton, 6 Heisk. 172, 19 Am. Rep. 593, held that the death of an animal replevied, without fault, relieved the plaintiff from his obligation to either return or pay value. But this was put upon the ground that "if a bond or obligation possible of performance at the time of execution becomes impossible by the act of God, or of the law, or of the obligee himself, the obligation will be saved"; citing Com. Dig. Condition D, 1 Coke on Litt., and certain earlier Tennessee cases, dealing with bonds made under decree of courts of equity for the forthcoming of property committed to the custody of the obligor as receiver or custodian. The decision did not profess to be an interpretation or construction of any statute, but was put upon principles of general law. It is, therefore, not a decision which a court of the United States is required to follow with respect to the liability of a plaintiff in replevin whose suit was prosecuted in a court of the United States, under a bond made in such court according to the requirement of the Tennessee statute. The general principles governing courts of the United States in respect of state laws and state decisions are so fully considered in Swift v. Tyson, 16 Pet. 1 et seq., 10 L. Ed. 865, Venice v. Murdock, 92 U. S. 494, 23 L. Ed. 583, Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298, and B. & O. Rd. v. Baugh, 149 U. S. 368 to 376, inclusive, 13 Sup. Ct. 914, 37 L. Ed. 772, and by this court in Wilson v. Perrin, 62 Fed. 629, 11 C. C. A. 66, Byrne v. Rd. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693, Zacher v. Fidelity Co., 106 Fed. 593, 45 C. C. A. 480, and Elliott v. Felton, 119 Fed. 270, 56 C. C. A. 75, that it is unnecessary to further consider the matter.

The question as to what will excuse a plaintiff for the nonreturn of property replevied when he fails to establish his title is clearly a question of general law, and was so regarded by the Tennessee court in the case cited. It is not a decision establishing a rule of property, as in Warburton v. White, 176 U. S. 484, 20 Sup. Ct. 404, 44 L. Ed. 555; nor does it involve the construction of a state statute, as in Byrne

v. Rd. Co., cited above; nor the effect or validity of a chattel morfgage, as in Wilson v. Perrin, cited above; nor the title of a foreign· receiver to local property under a general assignment, as in Zacher v. Fidelity Trust Co., cited above; nor the extent of the powers and liability of a local municipal corporation, as in Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260. The obligation of the plaintiff in a replevin suit does not become impossible of performance by the loss or destruction of the goods replevied, because his obligation is an alternative one, and, if it has become impossible to return to the defendant the goods wrongfully taken, it is not impossible to pay their value. And under Shannon's Code Tenn. § 5144, he is given the option to return the goods or pay their value.

Nor is such a plaintiff a mere custodian, responsible only for negligence. As we have seen, replevin is a redelivery to the owner of goods wrongfully taken or detained. If in fact he is not the owner, his claim was groundless, and he must restore that wrongfully taken, and will not be heard to say that he held at the risk of the true owner, and was liable only for negligence as a receiver or other bailee. But if we shall regard the case of Bobo v. Patton, 6 Heisk. 172, 19 Am. Rep. 593, as a case which we should follow as defining the local law in reference to replevin bonds instituted under the code provisions of Tennessee, that decision is by no means controlling in the case now under consideration. The property replevied in that suit was an animal, which died from disease contracted without plaintiff's fault or agency. This was held to relieve the plaintiff from liability to return, that being, of course, impossible, and to also relieve him from his obligation to pay her value. The death of the animal wholly without the agency or fault of the plaintiff was, in fact, a blameless misfortune. But in the case at bar the plaintiff, through his own act and active agency, elected to cause the goods replevied to be exposed to sale for the satisfaction of an alleged salvor's lien in its own favor. How can it be said that this property has been lost or destroyed or taken from him without any active agency of his own? Quite another question might arise if this proceeding had been adverse to the plaintiff. The proceeding was one in rem. The defendant did not appear or defend, so that no judgment in personam was rendered.

Considering the conclusiveness of the proceeding as to the lumber, and its liability as a whole to the salvage and towage claim asserted by the plaintiff as sole libelant, the fact remains that the lumber was so seized and subjected to this claim only at the instance of the plaintiff and solely for its own benefit. There was evidence that the plaintiff's agent was not only in the possession of the replevied lumber, but of the entire cargo, as well as the barge. Whether it be regarded as in possession of the replevied lumber as owner, or only as a bailee or custodian, it was under obligation to protect it against loss or injury, and in taking it off the submerged boat it was but saving its own or that committed to it as a bailee. Fleming v. Lay, 109 Fed. 952, 956, 48 C. C. A. 748. But whatever its rights against the barge and the remainder of the cargo, it could not have a salvor's lien against its own property or that in its care which it was under legal obligation to save. Salvage is a reward for services successfully rendered in saving prop-

erty from maritime danger by one under no obligation or duty to render the service. The Neptune, 1 Hagg. Adm. 227, 276; Firemen's Ass'n v. Ross, 60 Fed. 456, 9 C. C. A. 70; The Harvey (D. C.) 84 Fed. 1000; Murphy v. The Suliote (C. C.) 5 Fed. 99; The Nebraska, 75 Fed. 598, 21 C. C. A. 448. The barge upon which this lumber was situated was sunk at the bank, and in such shallow water that only about half of the entire cargo of lumber was submerged. By the services of the plaintiff the barge was raised, the lumber taken off, and re-laden upon another barge chartered by the plaintiff.

Conceding, for the purposes of this case only, that the plaintiff was wholly without fault, and that under the case of Bobo v. Patton the injury sustained by the replevied lumber should be regarded as a loss or destruction pro tanto, and allowance made for this in the recovery against plaintiff for damages for detention, the question remains whether the subsequent carrying of the lumber to Cairo, and there enforcing against it both a salvage and towage claim, by means of which the lumber has passed beyond the control of the plaintiff, is a discharge of his liability to pay the value of defendant's lumber. What plaintiff did in saving the defendant's lumber from loss and injury by water it was under obligation to do as one in possession under claim to ownership. What it did in carrying it, after it was saved, to Cairo, and there causing it to be seized and sold, it did voluntarily and in its own exclusive interest. The obligation to return the replevied lumber or pay its value and damages for detention has not become impossible through an "act of God, or of the obligee, or of the law," except as the law was put in force by the plaintiff for its own purpose. An obligation which is excused by act of law is where a covenant or condition subsequent, which is law when made, becomes subsequently unlawful by a change in the law. Thus, when property was conveyed to be used for burial purposes, and such use becomes subsequently unlawful, the forfeiture is excused. Board of Commissioners, etc., v. Young, 59 Fed. 96, 8 C. C. A. 27. Other illustrations are found in Marquis of Angelsea v. Rugeley, 6 Q. B. 107; Brewster v. Kitchin, 1 Ld. Raymond, 317, 321; Presbyterian Church v. City of N. Y., 5 Cow. 538. We have not been referred to any case which gives sanction to the claim that a plaintiff in replevin may relieve himself from his obligation to return or pay for property replevied in case he is cast in the suit, when he, as in this case, by his own institution of a suit in rem disables himself from the duty of returning. In Washington Ice Co. v. Webster, 68 Me. 449, taxes assessed against the defendant on the replevied property were paid by the plaintiff voluntarily, no seizure having been made to enforce collection. The payment was disallowed in reduction of damages for detention.

The judgment below was for the value of the lumber at the time it was taken, with interest. That much was in strict accordance with section 5144, Shannon's Code Tenn., as construed in Mayberry v. Cliffe, 7 Cold. 117. The jury also found, upon evidence, that there had been a rise in the value, and they accordingly assessed the difference between the value when seized and the value at date of trial as damages for detention. This, too, is in accord with the construction placed on

the act by the case cited above. But the court told the jury that they might mitigate damages for detention if they found that this lumber had been damaged by the sinking of the barge, without fault of the plaintiff. The jury rendered a special verdict in these words and figures:

We, the jury, find for the defendant:

| | | |
|---|---:|---:|
| 235,000 feet of cottonwood lumber at $12.00 per thousand, amounting to | $2,820 | 00 |
| Interest from January 22, 1902, to date | 241 | 11 |
| | $3,061 | 11 |
| We also fix damages at | 822 | 50 |
| Total | $3,883 | 61 |
| We arrive at the damage in the following manner: | | |
| 117,500 feet, at $18.00 per thousand | $2,115 | 00 |
| 117,500 feet, at $13.00 per thousand | 1,527 | 50 |
| Total | $3,642 | 50 |
| Less value at time of seizure | 2,820 | 00 |
| Damage | $ 822 | 50 |

It thus appears from the verdict that the jury found that one-half of the lumber seized had not been damaged at all, and that the other half had sustained a damage of five dollars per thousand, which reduced the value of the lumber at date of trial by $587.50, and this was accordingly deducted from the damages for detention. The plaintiff has thus been allowed to reduce the damages recoverable otherwise by the amount of the injury done the lumber by the sinking of the barge while it was in its possession. This was admissible only upon the theory that plaintiff was liable only for a loss due to its own negligent act. The plaintiff in error cannot complain of this, and the defendant in error has not.

In our view of the case, the plaintiff has obtained a better result than it was entitled to, and the judgment must be affirmed.