## BARBRICK v. WHITE SEWING MACHINE CO.

1. TROVER AND CONVERSION—VALUE—DAMAGES.

Evidence that a sewing machine which defendant's agent was charged with converting had cost a stated sum and testimony comparing the work done by it with the work of a new machine, was admissible, upon the question of damages in trover.

2. DAMAGES—VALUE—EVIDENCE.

Plaintiff's damages, in an action of trover for converting a second-hand sewing machine, were not limited to the market value, which defendant's agent testified was only $5 or $10, where plaintiff and his wife gave testimony tending to show the cost and present value and that it worked about as well as a new one; the owner being entitled to full compensation for his property.

Error to Kent; McDonald, J. Submitted April 7, 1914. (Docket No. 1.)   Decided June 1, 1914.

Trover in justice's court by William Barbrick against the White Sewing Machine Company for conversion of a sewing machine. From a judgment for plaintiff, defendant appealed to the circuit court in which judgment was rendered for the plaintiff. Defendant brings error. Affirmed.

*Holmes & Holmes* and *Don E. Minor,* for appellant.

*Dunham & Dunham,* for appellee.

MOORE, J. This suit is in trover. It was brought in justice's court to recover the value of a sewing machine. The plaintiff recovered a judgment for $30. The case was appealed by defendant to the circuit court, where plaintiff again recovered a judgment of $30. The case is brought here by writ of error.

Counsel for appellant say, we quote from the brief:

"There are no intricate questions of law involved in this case. It seems to us that all the questions involved and upon which error is assigned are too elementary to admit of discussion, and counsel desire to say at the outset that, but for the fact that the defendant is conducting a large business in this and other parts of this State in which the result of this case in the trial court might establish a dangerous precedent, the amount herein involved would not justify its seeking to have it reviewed by this court.

"While defendant has alleged 11 assignments of error upon the trial, it will be apparent that the error chiefly relied upon will be the improper admission of testimony offered by plaintiff by which he sought to show the value of the old machine, or, in other words, to show plaintiff's measure of damages, and that the verdict is against the weight of the evidence, and the damages are excessive."

The plaintiff is a married man with a wife and four children. It is his claim that his wife does not speak English well, and that in his absence an agent of defendant visited his house and tried to exchange a new machine for the one they had in the house; that

his wife declined to make any exchange in the absence of her husband, but that she was persuaded by the agent to allow him to take the old machine and leave a new one, the agent assuring her that if the husband did not approve he would return the old machine and take away the new one. It is the further claim that the agent left with the wife, though no money was paid, a paper reading:

"September 13, 1910.

"Received of Mrs. William Barbrick cash, $5.00, and old machine, $5.00, total paid, $10.00; balance $35.00, to be paid $2.00 monthly from this date.

"White Sewing Machine,
"————, Agent."

He also left with her a contract containing, among other things, the following:

"Having paid by cash, $5.00 and by Disc. $5.00 (stipulated rent for the first month only) for which I receive the company's so-called 'blue paper' receipt, I further agree to pay at the office of the said company, at Grand Rapids, Mich., or to its authorized collector, the sum of three dollars on the 25th day of each and every month after date, upon condition that when the entire amount of forty-five dollars, the agreed value of said sewing machine, including first payment, shall have been paid by me, the said company shall upon demand make me a bill of sale of said machine. And I agree to pay the said monthly rental until the balance of said agreed value shall have been paid; and it is further expressly understood that until the whole sum of said agreed value whether in judgment or not, shall be paid, the said White Sewing Machine Company neither parts with nor do I acquire any title to said White Sewing machine.

"And I agree that until this contract is fully paid, with interest after maturity, all payments made by me shall be considered by the parties hereto as payments by me for the use and rental of said machine under the terms hereof."

A sum of $5 was indorsed on the back of this paper. It is the further claim of plaintiff that, when he

reached home and found out what had been done, he did not approve, and that the agent was so notified in writing by means of a postal card, the next day; that the agent replied by postal that he regarded the transaction as a sale and should expect payments to be made according to the contract. No payments were made, nor was the old machine returned. The plaintiff declined to let the defendant take the new machine until the old one was returned.

The defendant claimed it was unable to return the old machine, but was willing to replace it with another, and finally brought replevin for the machine left at the house of the plaintiff. No defense was interposed to this action, and defendant recovered the machine. This action was then brought, with the result before stated. Upon the trial in the circuit court the plaintiff was allowed to testify to the cost of his machine, and he and his wife were both allowed to testify as to how its work compared with the work done by the machine left by the agent of defendant. Error is assigned upon the admission of this testimony.

Defendant gave testimony tending to show that the machine of plaintiff was not worth more than $5 to $10, and it is its claim that plaintiff is entitled to recover only the market value of his machine, and that the verdict of $30 is excessive.

In *Rose* v. *Lewis*, 10 Mich. 483, which was an action of trover for the wrongful conversion of a promissory note, Justice CAMPBELL, speaking for the court, said:

"It is undoubtedly true that damages for the conversion of articles having a regular market value are measured generally by that value. But that is only because such a measure furnishes the precise redress which the law always aims at giving, by making good as near as may be the injury which the aggrieved party has sustained. Where articles have not a standard or market value, then their value to the owner, so far as they are susceptible of pecuniary measure-

ment which is not fanciful or merely speculative, furnishes the true test."

A judgment for the full amount of the note was sustained, though some witnesses for the defendant testified that the maker of the note was in debt and had no property to pay his debts.

In *Dalton* v. *Laudahn*, 27 Mich. 529, it is said:

"The rule seems to be settled that when property is tortiously taken, the owner is not only entitled to an action, but to full compensation in damages."

In *Smith* v. *Mitchell*, 12 Mich., at page 191, it is said:

"Evidence of what the property brought at auction is admissible, as having some tendency to prove value."

In *Worthington* v. *Hanna*, 23 Mich., at page 534, it is said:

"It is also alleged as error that the court refused to instruct the jury to disregard the appraisement made under the attachment proceedings, in estimating the value of the goods.

"Plaintiff in error was allowed to introduce testimony on this subject, and the appraisal was left to the jury for what it was worth and not as in any way conclusive. We do not think there was any objection to this. It is a sworn valuation, made under the statute by persons selected by the plaintiff in error himself, as most likely to value the property judiciously. It is so far conclusive that the sheriff is compelled to release the property on a bond proportioned by its value. Testimony of value, being very much matter of opinion, has been received from many sources supposed to be reasonably reliable, upon less security against error than exists here. In *Smith* v. *Mitchell*, 12 Mich. 180, we allowed auction prices to be considered. In *Sisson* v. *Railroad Co.*, 14 Mich. 489 [90 Am. Dec. 252], values were allowed to be shown by the published prices current. In *Cliquot's Champagne*, 3 Wall. [U. S.] 114, and *Fennerstein's Champagne*, 3 Wall. [U. S.] 145, a still more liberal rule was adopted. There may be serious objections to

making any of these extraneous estimates conclusive. But when an appraisement is made in pursuance of a statute under oath, in the course of the proceedings, under which the party has himself acted, and he himself selected the appraisers, we think it would be going too far to say that such a valuation is entirely worthless as evidence against him. Assuming that he acted fairly in selecting them—and this is a reasonable presumption—it must be supposed that the safeguards provided by the statute with an express reference to securing this evidence will give it at least a claim to consideration against the officer who obtained it. See, also, *Comstock* v. *Smith*, 20 Mich. 338; *Kermott* v. *Ayer*, 11 Mich. 181."

We do not think there is occasion to reverse this case.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.